## THE BOARD OF COUNTY COMMISSIONERS OF PUEBLO COUNTY v. SMITH.

1. OFFICERS—JUSTICES OF THE PEACE.

Justices of the peace are constitutional officers.

2. SAME—CONSTITUTIONAL LAW.

The act of 1891 authorizing an additional justice of the peace in precincts having a population of over twenty thousand was a valid exercise of legislative power.

3. SAME—STATUTORY CONSTRUCTION.

Whenever the conditions prescribed in the act of 1891 are made to appear, it is the duty of the proper board of county commissioners to appoint the additional officers therein prescribed. " May appoint," as used in this act, means " shall appoint." " May " must be construed as " shall," when the act can be thereby upheld, if a contrary construction would render it obnoxious to some constitutional inhibition.

4. OFFICERS.

After the number of justices of the peace in a precinct has been increased by the board of county commissioners, acting under the statute of 1891, it has no power of removal, or of declaring the officer no longer necessary, or power to abolish the office.

*Appeal from the District Court of Pueblo County.*

THIS is a mandamus proceeding submitted upon an agreed state of facts, from which it appears that in the year 1893 the board of county commissioners of Pueblo county, being of opinion that the needs of precinct No. 1 in that county required an additional justice of the peace, increased the number of justices by the appointment of an additional justice. August 21, 1895, this order was rescinded, and a resolution entered of record declaring the number of justices reduced to two.

At the regular election in 1895, one Carey received the highest number of votes and appellee the next highest. Certificates of election having been issued to both, appellee executed and tendered his bond, claiming to be entitled to act as a third justice. The board of county commissioners,

this being the body charged with the duty of passing upon the sufficiency of bonds of justices elect, disapproved appellee's bond for the sole reason that in the judgment of the board there was no office for him to fill. Thereupon appellee instituted this action to compel the board to approve the bond. The district court decided in favor of appellee and awarded him the writ as prayed for. The case is brought here by the board by appeal.

The questions submitted to the court for its decision are:

1. Is the act of April 13, 1891, providing for increasing the number of justices by the board of county commissioners in precincts of more than twenty thousand inhabitants, if, in the judgment of the board, the needs of the precinct require such increase, constitutional?

2. If the said act be constitutional, did the defendant board have authority to reduce the number of justices from three to two, after action had been taken by it increasing the number?

The act of 1891 referred to reads as follows:

"SECTION 1. The board of county commissioners of any county in this state, having within their respective counties a justice precinct of more than twenty thousand inhabitants, may, at any regular meeting of the board, appoint one or more justices of the peace, and one or more constables, as the needs of the precinct may require, and such appointees shall hold office until their successors are elected and qualified; *Provided*, That, in addition to the two justices of the peace, and the two constables now provided by law for each justice precinct, such board of county commissioners shall not appoint more than one such justice and constable for each twenty thousand inhabitants in such precinct."

"SEC. 2. The boards of county commissioners shall unite two or more contiguous justice precincts where parts of the two or more precincts lie within the corporate limits of a town or city, and may add thereto such adjoining precincts or parts thereof, as the said board of county commissioners may deem best. The powers, duties and jurisdiction of the

officers of precincts thus united shall be equal in every respect; *Provided*, The term of office of no such justice or constable shall be construed to be abridged or extended thereby."

"SEC. 3. It shall not be lawful hereafter to divide an incorporated town or city into two or more justice precincts."

The constitutional provisions bearing upon the questions presented are as follows:

" The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:

\*       \*       \*       \*       \*       \*       \*       \*

"*Fifth.*—Regulating county or township affairs.

\*       \*       \*       \*       \*       \*       \*       \*

" *Twenty-fourth.*—In all other cases, where a general law can be made applicable, no special law shall be enacted." Art. V., sec. 25.

"The judicial power of the state as to matters of law and equity, except as in the constitution otherwise provided, shall be vested in a supreme court, district courts, county courts, justices of the peace, and such other courts as may be provided by law."   Art. VI., sec. 1.

"Justices of the peace shall have such jurisdiction as may be conferred by law; but they shall not have jurisdiction of any case wherein the value of the property or the amount in controversy exceeds the sum of three hundred dollars, nor where the boundaries or title to real property shall be called in question."   Art. VI., sec. 25.

"All laws relating to courts shall be general and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of all the courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally, shall be uniform." Art. VI., sec. 28.

Mr. E. C. GLENN and Messrs. HARTMAN & GLENN, for appellants.

Mr. CHAS. E. GAST, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Is the act of 1891 in violation of section 28 of article VI. of the state constitution? The first section of article VI. of the state constitution provides that " the judicial power of the state, * * * shall be vested in * * * justices of the peace, * * * ." Section 25 provides that " justices of the peace shall have such jurisdiction as may be conferred by law, except," etc.

By section 11 of article XIV., the election of such officers is provided for and the term of office fixed at two years. This section fixes the number of justices at two in each precinct, with a proviso that in precincts having five thousand or more inhabitants *the number of justices may be increased as provided by law.*

Without doubt, the two justices provided for each precinct by the constitution are constitutional officers, and when the number of justices is increased in any precinct, the new justices are placed on an equal footing with those whose offices are definitely fixed by the organic law, and all are constitutional officers. The act of 1891 does not attempt to create the office of justice of the peace, or provide for the creation of such office. It simply authorizes an additional justice in precincts having a population of over twenty thousand inhabitants, where the needs of the precinct may require it, leaving the organization, jurisdiction, powers, proceedings and practice in all justices' courts as at the time fixed by general laws, or as shall be provided by such laws in the future. The uniformity required by the constitution in this regard is therefore respected.

The constitution creates the office of justice of the peace, and provides that there shall be not less than two justices in each precinct. It does not designate the number of precincts in which the county shall be divided. This is not mentioned in that instrument; but from the earliest period of our state

government, the boards of county commissioners of the several counties have been vested by statute with the power to increase or diminish the number of precincts, as in their judgment the public good should from time to time require. Mills' An. Stats., sec. 929. This act has been in force, except as modified by the statute of 1891, for nearly twenty years, and its constitutionality has never been questioned in the courts, and, if now questioned, we should labor long and earnestly to uphold the act, being impelled thereto by the maxim which requires the unconstitutionality of an act to be shown beyond all reasonable doubt before the act can be overthrown, and for the further reason that courts have been brought into existence and have discharged their functions for many years under this act, and its overthrow at this time would be attended with such disastrous results as might well cause any court to pause and hesitate before reaching a conclusion adverse to the act.

Moreover, we know of no provision of the constitution with which the act conflicts. The justices' precincts under the constitution takes the place of township organizations as they existed in territorial times. For each township there were two justices provided and power given the boards of county commissioners in their respective counties to set off, organize, establish and change the boundaries of the townships in their discretion. Revised Stats. 1868, pp. 169–188.

The framers of our fundamental law were familiar with these provisions, and if they had wished to take from the legislature this power, we have no doubt that they would have given expression to such intent in language that could not have been misunderstood.

At the first legislative session under the new constitution the act of 1877 was passed. In support of a construction of the constitution which permits the increase and decrease of justices' precincts by the boards of county commissioners in their respective counties, we therefore have a contemporaneous declaration of a legislature composed in part of the same men who framed the constitution. We have dwelt

upon the act of 1877, not because its constitutionality has been directly attacked in this case, but for the reason that the case of *State v. Adams*, hereinafter specifically referred to, is strongly relied upon by appellants, and, as we shall presently show, this case, if followed, would overthrow the statute of 1877 as well as the act of 1891.

The legislature is not given power to create the office of justice of the peace, but when a new precinct is established, the offices spring into existence by virtue of the constitution. And as in this case said by Judge Dixon of the district court: " And what difference in principle can there be between a case where the offices are called forth by the creation of a new precinct, and a case where the office is called forth by a resolution, reciting the need of an additional officer in a given precinct? In both cases, the moving cause is the desire to subserve the public convenience. In one case the public need is expressed indirectly, by the creation of a new precinct; in the other case it is expressed directly by a resolution to that effect. In neither case do the county commissioners create the office. They simply determine the contingencies upon which the law is to take effect, and when they have spoken, the constitution acts and the office is thus called forth from a potential into an actual existence and takes its place as a part of the regular judicial machinery of the state."

It is contended, however, that the act is unconstitutional because it vests a discretion in the several boards of county commissioners to determine whether or not the needs of the precinct require an additional justice or justices. The argument is that the uniformity provision of the constitution has been violated by this statute. It is said that under it the city of Pueblo, with thirty-five thousand people, has three justices, while Denver, with one hundred and twenty-five thousand people, has the same number.

Several propositions are advanced by appellants under this general objection: First, it is contended that the legislature, acting under the power conferred to increase the number,

must do so by a general law providing for an increase in each and every precinct in the state containing five thousand or more inhabitants; second, that if the foregoing test as to the number of inhabitants is not the correct one, that nevertheless the increase must be by general law, based upon the number of inhabitants in each precinct,—for example, in all precincts having a population of over twenty thousand and less than fifty thousand, the number of justices must be the same, etc. If either of these contentions of counsel should be upheld, the powers of the legislature would be restricted, so that in order to provide for the necessities in one precinct it might be compelled to increase the number of justices in many other precincts, although the necessities of the people in other precincts do not require such increase.

In case of an increase, the constitution does not require in terms such increase to be made in every precinct containing five thousand or more inhabitants. It only fixes the minimum number of inhabitants upon which the increase may be made. The legislature is left free, in so far as the question of population is concerned, to make the increase applicable to precincts having five thousand inhabitants, or applicable only to precincts having twenty thousand or more inhabitants, as it has done in the present instance. Neither do we think that in precincts containing five thousand or more inhabitants the increase must be made dependent upon the number in excess. We find nothing in the constitution that requires this, or prevents the legislature from providing for the increase as the needs of the several precincts may require, and for many reasons the latter test seems the more reasonable and appropriate of the two. Moreover, if the number of inhabitants is made the criterion, the legislature must depend upon some agency to ascertain the number in the several precincts. As that body is not constituted to take the census, it must rely either upon a census already taken or to be taken, and for the effective exercise of its power under such a rule it might, and in some instances it would be necessary for it to, designate some appropriate officer or board to make the enumeration.

This brings us to the question raised with reference to the power of the legislature to delegate to the several boards of county commissioners authority to ascertain the needs of those precincts having the requisite population.

Judge Dixon was of opinion that the power conferred upon the boards of county commissioners could be sustained upon either of two principles of constitutional law: First, the law being complete, its operation might be made contingent; second, because such delegation is in the furtherance of the power of local self-government.

It will be conceded that the powers conferred upon the legislature to make laws cannot be delegated to any other body or authority, except as the principle may be modified by the second maxim.   It is, however, not essential that the law should take effect immediately upon its leaving the hands of the legislature.   Its operation may, under certain limitations, be made to depend upon a contingency.

Mr. Justice Agnew, speaking for the court in *Locke's Appeal*, 72 Pa. St. 491, says: " What is more common than to appoint commissioners under a law to determine things, upon the decision of which the act is to operate in one way or ' another? * * * Then the true distinction, I conceive, is this:—the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend.   To deny this would be to stop the wheels of government.   There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be the subject of inquiry and determination outside the halls of legislation."

In the case of *Lothrop v. Stedman*, 42 Conn. 583, a law making a repeal of a charter dependent upon a deficiency to be determined by a tribunal provided for by the repealing act was held not obnoxious to the rule prohibiting the delegation of legislative power.   In *Burlington v. Leebrick*, 43 Iowa, 252, it was held that the question of extending mu-

nicipal boundaries might be referred to a court for determination upon disputed facts.

So, also, it has been held in numerous cases that a commission may be given power to select a site for a public building. *People v. Dunn*, (Cal.) 22 Pac. Rep. 140 ; *Territory v. Scott*, 3 Dak. 357.

The case of *Ex parte Bassitt*, (Va.) 19 S. E. Rep. 453, is specially applicable to the facts before us. A provision of the code of that state enacts that " Whenever a county court shall be of opinion that the public service requires a greater number of justices or constables in any district than those specified in the constitution and shall so enter of record and designate the number of such additional officers, notice thereof shall be published in such district, and at the next succeeding general election for district officers, such additional officers shall be elected in the mode prescribed for the election of district officers, and continue to be elected at each succeeding general election of district officers until otherwise ordered by the court," etc. The constitutionality of this provision was questioned under the following : " Each county of the state shall be divided in so many compactly located magisterial districts as may be deemed necessary, not less than three. * * * In each district there shall be elected one supervisor, three justices of the peace, one constable, etc., who shall hold their respective offices for the term of two years." By another section it is provided that nothing in this article shall be construed as prohibiting the general assembly from providing by law for any additional officers in the city or county. It is to be noticed that the Virginia constitution, like our own, does not describe the manner in which the additional officers shall be provided for, but leaves that entirely to the legislature. In construing these provisions, the court held that the county courts were merely empowered to declare the event upon which the statute is to take effect in their respective counties, and that this was not a delegation of legislative power.

And of like effect are *Aurora v. United States*, 7 Cranch,

382; *Bull v. Read*, 13 Gratt. 78; *State v. Parker*, 26 Vt. 357; *State v. Kirkley*, 29 Md. 85; *Walton v. Greenwood*, 60 Me. 356; *Georgia R. R. Co. v. Smith*, 70 Ga. 694; *People v. Reynolds*, 5 Gilman (Ill.), 1.

An examination of the cases relied upon by appellant discloses that in general they are readily distinguishable in principle from *Ex parte Bassitt* and the case at bar.    Thus, in the case of *Bolt v. Riordan*, 73 Mich. 508, it was held that an act attempting to confer upon the common council of the city of Muskegon the power to increase the number of its board of supervisors at the discretion of the council is in conflict with section 7 of article X. of the constitution of that state, which provided, " The city shall have such representation in the board of supervisors in the county in which they are situate, as the legislature may direct."    Here the power to fix the representation in the board was lodged in the legislature by the constitution, and it was held that this power could not be delegated.

In the case of *People v. Cooper*, 83 Ill. 585, it was held that a city tax act attempting to establish different modes for the levying and collection of taxes in different cities is in violation of the constitutional provision against local or special laws.    The court, however, in the opinion, expressly recognized the existence of the freest liberty in the citizens to become incorporated or not, as they might elect.

The case of *In re Cloherty*, 2 Wash. 137, is strongly relied upon.    The facts were that the city of Tacoma, by an ordinance, attempted to create a police court, and it was held that the legislature had not attempted to confer upon the municipality the power to do this, and, further, that the constitution had lodged the power to create such inferior courts in the legislature, and it could not be delegated.    It requires no argument to show the difference in principle in these cases and the one at bar.

A number of cases have been cited from California which have more or less bearing upon the questions presented here. In the case of *People v. Parks*, 58 Cal. 624, the drainage act

of that state was declared unconstitutional upon several grounds, among which were that it attempted to delegate to executive officers powers that could only be exercised by the legislature. The powers attempted to be conferred by the act under consideration in that case included the power of taxation and the right of condemnation, and the argument proceeds to some extent upon the delegation of legislative powers to executive officers. The act being in violation of several other provisions in the California constitution, but little attention was given to the question before us.

In *Ford v. Harbor Commissioners*, 81 Cal. 19, a majority of the court held that the state board of harbor commissioners had authority to create the office of wharfinger or collector, and abolish the same at pleasure. The case is hardly an authority upon the question of the delegation of powers, but in so far as it is applicable, it is in support of our conclusion.

In the case of *Dougherty v. Austin*, 94 Cal. 601, the statute under consideration attempted to delegate to the board of supervisors of certain counties the duty of regulating the compensation of all county officers in proportion to their duties. This being a power vested in the legislature by the constitution, it was held that it could not be delegated. In speaking of this section, the court says: " By it, as thus amended, an attempt is made to delegate to the board of supervisors of Marin county the power to change the salary of the county clerk of that county whenever it shall appear to such board that the salary, as thus fixed, is insufficient to pay him a reasonable compensation for his services. The salary of this officer was fixed by the legislature, with direct reference to the fact that out of such he was to pay his own deputies, and the purpose of this amended section is to authorize the board of supervisors to suspend the operation of this law." It was held that this could not be done, as it involved changing the law of the state, a power necessarily legislative in character.

In the case of *Welsh v. Bramlet*, 98 Cal. 219, the question was presented as to the right of the legislature to provide

that the compensation of the assistants of district attorneys of counties of the eighth class shall be paid by the county, while in counties of other classes such assistants were paid by the district attorneys. The court held the act local and special in character, and therefore in violation of the constitution.

The case of *State v. Adams*, (Tenn.) 18 S. W. Rep. 393, is more closely in point than any other case cited by appellant. A legislative act providing that every city having a certain population shall be entitled and have two justices of the peace for each ward into which such city may be subdivided was found unconstitutional, although the constitution provided that "the legislature shall have power to provide for the appointment of an additional number of justices of the peace in incorporated towns." The act involved the power by the municipality to increase the number of justices indefinitely, by merely increasing the number of wards. The court seems to have regarded such an increase as an evil that could not, under any circumstances, be tolerated. The act was found unconstitutional for other reasons, and the objection which we are now considering was treated very summarily. The decision upon the particular question involved in this case seems to be based upon the policy of the constitution of Tennessee, which, when construed as a whole, the court says was intended to limit the number of justices in each county, and while the number in incorporated towns may be increased, the increase can only be made by definite legislative action.

We have no provision in our constitution limiting the number of justices in any county or in any municipality of the state, and, as we have seen, the commissioners have from an early date exercised the power to increase the number of precincts, thereby increasing the number of justices, and, as we have already shown, the exercise of such power violates no provision of the constitution of our state. There being no limitation in this state upon the number of justices in a county, the force of the decision in *State v. Adams*, as a

precedent, is correspondingly lessened. Should we follow that case, we would thereby wipe out the statute of 1877, which has never before been and is not now questioned. Moreover, it cannot, in our opinion, be successfully questioned for the reasons hereinbefore given.

The act of 1891, as we read it, was complete as it left the hands of the legislature. It applies alike to all counties in the state, and whenever the prescribed conditions are made to appear in any precinct, it is the imperative duty of the proper board of county commissioners to appoint the additional officers therein prescribed.

In reaching this conclusion we construe the words "may appoint" to be equivalent to "shall appoint." The word "may" is frequently so construed and must be held to have this meaning, if thereby the act can be upheld, and if a contrary construction would render it obnoxious to some constitutional inhibition.

We are next to determine the power of the commissioners to reduce the number of justices, as attempted by the appellant board. It will be conceded that, "as a general rule, when the term of office is not fixed, the power of removal accompanies the power of appointment as incidental thereto." *In re Speakership*, 15 Colo. 520.

It is, however, apparent that this rule can have no application to the case presented. The office of justice, as we have seen, is a constitutional office, with the term of the incumbent fixed. The act under consideration, as we have construed it, is a complete statute, to take effect in the several counties upon the happening of certain contingencies specified therein. The legislature has delegated to the boards of county commissioners in their respective counties the power to determine the existence of the conditions prescribed, and has not attempted to delegate the power of removal or of declaring the officer no longer necessary, or power to abolish the office. The legislature not having attempted to invest the boards with such power, its exercise is clearly unwarranted, and for this reason the resolution of August 21, 1895, is of no force or effect.

As this disposes of the present controversy, we may be excused from following the able argument of counsel upon the constitutional power of the legislature to accomplish the result attempted to be reached by the board of commissioners. Should a statute be passed for this purpose, and its constitutionality be brought in question, it may be necessary to determine the question, but it is certainly neither necessary nor a proper matter for consideration at this time.

The judgment of the district court is accordingly affirmed.

*Affirmed.*