[Civil No. 1453.   Filed April 18, 1918.]

[172 Pac. 276.]

# YUMA COUNTY, Plaintiff, v. MARICOPA COUNTY, Defendant.

1. COUNTIES—BOUNDARIES—DETERMINATION BY BOARD OF SUPERVISORS—EFFECT.—Civ. Code of 1913, paragraphs 2373, 2380, fix the boundary line between Yuma and Maricopa counties upon meridian line 113 degrees, 20 minutes west longitude. Revised Statutes of 1887, paragraph 369, provided that whenever the boundary line of any county should be so indefinite as to make it impossible to determine where the lines are, and when a part of the territory by reason of such indefinite description is claimed by two counties, the boards of supervisors of such counties may have a survey made to define the boundary, and makes the decision of arbitrators on appeal final. *Held* that the boundary line was not indefinite, and where the meridian line had not been surveyed and located on the ground, there was no tangible basis for a dispute, so that the act of county officials in 1889, in surveying and marking the line, could not have been taken under the act.

2. COUNTIES — BOUNDARIES — PROCEEDING TO ESTABLISH.—Under Civil Code of 1913, paragraphs 2373, 2380, and Laws of 1889, No. 42, permitting the boards of supervisors of contiguous counties to define the county boundary line by having a joint survey thereof made, and by establishing posts thereon, the act of the respective county boards of supervisors in making a survey, and posting, without making or filing the record thereof as required by the act, in the absence of any provision making the survey final or declaring it to be the true boundary line, was binding until in the regular course of law the true boundary was located on the ground.

3. COUNTIES—BOUNDARY LINE—DETERMINATION BY COURT—STATUTE.— Civil Code of 1913, paragraphs 2373, 2380, define the boundary line between Yuma and Maricopa counties as meridian line 113 degrees, twenty minutes west longitude; Constitution, article 6, section 4, gives the supreme court original and exclusive jurisdiction to determine disputed county boundary; and Civil Code of 1913, paragraphs 2381–2385, provides that on any dispute as to location of a county boundary line, either county may commence an action in the supreme court to have the line determined, and requires the court to define the true boundary line and directs that it be marked. *Held* that, even though a boundary line other than the true one may have been adopted by the legislature, it had the power to change it back to the true line fixed by statute, and that the court would define the true statutory boundary line.

4. Counties—Establishment of Boundary Line—Recovery of Taxes. Where the county supervisors of Yuma and Maricopa counties in 1889 made a joint survey of the boundary, and mutually agreed upon it, and acted thereon in the collection of taxes, etc., until 1907, the boundary agreed upon was binding until the true boundary was lawfully established, so that, where a strip in which Maricopa county had collected taxes during that time was determined to belong to Yuma county, the latter county could not recover taxes so collected.

[As to location of boundaries by acquiescence or agreement, see notes in 69 Am. Dec. 711; 27 Am. Rep. 239.]

Original proceeding.

Mr. Clement H. Coleman, County Attorney, and Mr. Thomas D. Molloy, for Plaintiff.

Mr. Clyde M. Gandy, County Attorney, Mr. A. C. Baker and Mr. J. L. B. Alexander, for Defendant.

ROSS, J.—This is an original proceeding instituted by Yuma county against Maricopa county under the provisions of paragraphs 2381–2385 of the Civil Code of 1913, which, among other things, authorize and empower this court to take jurisdiction of disputes arising "between two counties respecting the location of the boundary line between such counties," and also make it the duty of the court, in its judgment, to "define and designate the *true* boundary between the two counties."

It is alleged in the complaint that the boundary line between the two counties is fixed by law along 113 degrees 20 minutes west longitude; that the defendant has extended its sovereignty and jurisdiction over a strip of land 4.215 miles east and west in width, and 103 miles in length north and south, to the west of and adjoining said meridian line, and has wrongfully exercised sovereignty and jurisdiction over such strip of land ever since 1890. For a second cause of action the plaintiff seeks to recover from the defendant county taxes that have been collected by defendant upon the property located in said disputed strip of land.

The answer admits that the true boundary line between the counties, as fixed by law, is 113 degrees and 20 minutes west, but alleges that it was so indefinite as to make it impossible to determine where such line was upon the ground, and that by reason thereof a portion of said territory adjacent to said

boundary was claimed by both counties; that in 1889, pursuant to paragraphs 369, 370, and 371 of the Revised Statutes of 1887, and to Act No. 42, 15th Legislative Assembly, and acting thereunder, the boards of supervisors of Yuma county and Maricopa county, deeming it necessary that the boundary separating said counties should be defined so that it could be easily determined jointly by the supervisors of the two counties, caused the same to be surveyed its entire length and marked upon the ground with posts one mile apart. Thereafter, in 1889, the boards of supervisors of both counties approved said survey, and adopted, approved, and established the line so marked as the boundary line between the counties, and that both counties have ever since recognized and accepted said line as the boundary. Defendant also pleads estoppel and laches and limitation.

The plaintiff filed a reply to the answer, denying that in 1889 the true boundary line was so indefinite as to make it impossible to determine where such line was upon the ground, or that it was at all indefinite; also controverting the legality and regularity of the proceedings by the boards of supervisors, and alleging that they had acted without jurisdiction.

The pleadings were several times amended, and it is possible that they present other issues, but we do not deem it necessary that they be further stated in this opinion.

The Honorable John H. Campbell was appointed by the court referee to take testimony, with directions that he render findings of fact and conclusions of law. Upon the report of the referee being filed, the defendant moved for a judgment thereon. The plaintiff moved to set aside the findings of fact and conclusions of law, and for a rehearing; also filed exceptions to the findings and conclusions. The case was submitted to the court upon these motions.

The substance of the findings of fact is that the statute fixes the boundary between the counties as meridian 113 degrees 20 minutes west longitude; that prior to January 1, 1889, the boundary had not been marked on the ground or defined so that it might easily be determined; that during 1889 the boards of supervisors of said counties, acting together, caused the surveyors thereof to jointly survey such boundary line, and to mark the same its entire length, and that said boards of supervisors approved and adopted said survey as the boundary line between said counties; that the

line so surveyed and marked is not the true line separating said counties as prescribed by statute, but is something more than four miles west of meridian line 113 degrees 20 minutes west longitude; that from and after said survey was approved the officials of both counties, and the inhabitants thereof, acquiesced in and recognized the line so surveyed as the boundary, without protest, until 1907, when the board of supervisors of plaintiff advised the board of supervisors of defendant that the line as surveyed and marked was not the true line, and requested that another survey be made, and that similar requests have been made from time to time since 1907, all of which have been refused by the board of supervisors of defendant county; that no other action or proceeding has been taken by plaintiff, other than requests for another survey, until the institution of this suit; that defendant has, at all times since the approval of said survey, exercised jurisdiction over the territory lying between the true boundary line as defined by statute and the line as so surveyed and marked, and has levied and collected taxes upon the property there situated; that the lands in dispute have been arid and sparsely settled, and the board of supervisors or other officials of plaintiff did not discover that the true boundary line as defined by statute was not defined and marked by said survey until on or about the year 1907.

The referee's conclusion of law is that ''the plaintiff county should not recover in this action, for the reason that the county surveyors of the counties of Yuma and Maricopa, in making the survey and in marking the line as aforesaid, were the agents of the legislature of the territory of Arizona in determining the position on the surface of the earth of the meridian line 113 degrees 20 minutes west longitude, and having determined the same, though erroneously, the determination is binding upon said counties and relief may only be given by the legislature.''

We are to determine whether the legal conclusion by the learned referee is the law under the facts as found or not, there being no material dispute as to the facts.

We will inquire, first, as to whether the determination of the board of supervisors of the boundary line in 1889 was binding and conclusive upon the counties; and, second, if so, whether the legislature has notwithstanding made it the duty

of the court, in its judgment, to define and designate the true boundary dividing the counties.

Paragraph 2373 of the Civil Code of 1913 describes the western boundary line of Maricopa county as coincident with the east boundary line of Yuma county, and defines it as meridian line 113 degrees 20 minutes west longitude. Paragraph 2380, Id., describes the eastern boundary line of Yuma county as meridian line 113 degrees 20 minutes west longitude, "along the western boundaries of Pima, Maricopa, and Yavapai counties." These sections have been carried forward in the different revisions of the statutes unchanged since February 14, 1871, the date Maricopa county was created. The true statutory dividing line between the counties, then, is 113 degrees 20 minutes west longitude. The legislature, the only authority in the sphere of creating counties and fixing their boundaries, has so said; and unless it has, in the exercise of that exclusive and supreme power, by some act of its own or by its authorized agent, changed the boundary, such meridian has always been and is now the true boundary between plaintiff and defendant. At the time (1889) when the supervisors of the two counties surveyed and marked the dividing line, the statutory law on the subject was contained in paragraphs 369, 370, and 371 of the Revised Statutes of 1887, and Act No. 42 of the Laws of 1889. The first of these provided that "whenever the boundary line of any county shall be so indefinite as to make it impossible to determine where such lines are, and when a portion of territory by reason of such indefinite description is claimed by two counties, the board of supervisors" of the counties may have a survey made "to define the boundary," and, in case either county is dissatisfied with the boundary line determined, it may appeal to arbitration, "from which arbitration there shall be no appeal and the decision shall be final." The action of the officials of the two counties in 1889 was not taken under this statute for two reasons: First, the jurisdictional fact of a claim of a "portion of territory" by the two counties because of "indefinite description" of the boundary line between them did not exist. The meridian line separating the counties had not been surveyed and located on the ground, and until that was done there was no tangible basis for dispute over the territory. The boundary being the meridian line, its description was not indefinite. *Crook County* v. *Sheridan*

*County*, 17 Wyo. 424, 100 Pac. 659; *Hinsdale County* v. *Mineral County*, 9 Colo. App. 368, 48 Pac. 675.   In the former case the court said:

"There was no uncertainty in the description of the western boundary line.   The fact that a certain meridian of longitude was designated as the boundary did not render the descriptive line uncertain or make the statute ambiguous so as to require construction through the aid of extrinsic circumstances.   Although a line so described may be difficult of practical location, nevertheless, when employed to define a boundary line, it constitutes the true line to be followed in making a practical location."

In the latter case it was held that a meridian boundary line was not an indefinite description of a dividing line, and the court said:

"It is only in case of a dispute arising out of an indefinite description that the statute can be invoked."

The proceedings taken in 1889 show upon their face that they were had under Act No. 42, Laws of 1889.   The initial step taken in that proceeding was a resolution passed by the board of supervisors of Yuma county, in which it is recited that the proposed survey should be "in accordance with an act of the 15th Legislative Assembly," giving the title of Act No. 42.   This act makes provision for the boards of supervisors of contiguous counties, when deemed necessary by them, or either of them, to define the county boundary between them by having a joint survey thereof made, and by establishing posts thereon one mile apart, "so that it may easily be determined."

The respective boards regularly pursued the authority granted under the act as to the survey and posting, but the record thereof was not made and filed as required.   The act made it the duty of the boards of supervisors to have made a map of the said survey, and also a map of the exterior boundaries of their counties, "which said maps should be filed with the clerk of the board of supervisors."   No maps were made and filed, but this cannot affect the result or the jurisdiction of the board to act.   The actual survey and marking upon the ground would control over the calls of the map in case of a conflict, even had maps been made.   Jurisdiction under this act is not predicated on an indefinite description of the boundary line nor upon adverse claim to a portion of

territory. If the board of supervisors deemed it necessary that the boundary be defined, it was authorized to make a survey for that purpose, providing the supervisors in the contiguous county joined in the survey. The act is silent as to the effect of the survey. It does not make the determination of the survey "final" and forbid "appeal," as in the previous law. Paragraph 370, *supra.* There was nothing in the act or the general laws of the territory affording relief from errors or mistakes, if any were later discovered, and this condition continued until 1913, when this court was given jurisdiction of disputed boundaries between counties.

The defendant lays down a proposition of law, identical with the referee's legal conclusion, to the effect that "when a county line has been run and marked on the ground in accordance with law by the agents designated by the legislature, it is conclusive and can only be changed by legislative enactment"; and cites in support thereof *Kaufman County* v. *McGaughey,* 3 Tex. Civ. App. 655, 21 S. W. 261; *Jones* v. *Powers,* 65 Tex. 207; *Trinity County* v. *Mendocino County,* 151 Cal. 279, 90 Pac. 685; and *Board* v. *Head,* 3 Dana (33 Ky.), 489.

The two Texas cases approve the proposition as stated, and correctly so; for at the time of their rendition the statute of that state contained this provision, "The line so surveyed and marked shall thereafter be regarded as the true boundary line between the counties."

In the California case the court was compelled to announce the same rule or disregard the statute, which read: "The lines run out, marked and defined as required by this act are hereby declared to be the true boundary lines of the counties named herein."

The Kentucky case arose between private parties, and the question involved was as to whether it could be shown that Head's dwelling and stable were in Hancock and not in Daviess county. The statute provided that the boundary line should be run "so as to leave William Head . . . in the county of Daviess," and the line was so actually run. The court rejected the offer of evidence to show the line was not properly placed on the ground, and very correctly so, in view of the language of the statute.

So it would seem that the proposition of law made by defendant is of doubtful soundness, except where the legislature

declares the effect of such a location of the boundary line to be conclusive or that it shall be the true boundary line. We think a more reasonable and just construction, in the absence of a legislative declaration, as in California and Texas, would be that the legislature intended the marking of the boundary line as binding, in the exercise of jurisdiction and sovereignty over the disputed territory, until, in the regular course of law, the true boundary line was located upon the ground.

However that may be, we are constrained to the opinion that it is now the duty of this court to "define and designate the true boundary line between the two counties." While the provisions of the law heretofore discussed were carried forward into the Revised Statutes of 1901 as paragraphs 945–950, in the revision and compilation of the Laws of 1913 they were omitted, and in lieu thereof paragraphs 2381–2385 of the Civil Code of 1913 were enacted. This last piece of legislation was in response to a provision contained in section 4, article 6, of the state Constitution, which vests in the supreme court "original and exclusive jurisdiction to hear and determine all causes between counties concerning disputed boundaries and surveys thereof."

Paragraph 2381 provides:

"Whenever any dispute arises between two counties respecting the location of the boundary line between such counties, . . . either county may commence an action against the other in the supreme court of the state of Arizona for the purpose of having such boundary line determined."

Paragraph 2382 provides that the court may order a survey of such disputed boundary, and that maps and drawings thereof be made; paragraph 2383 provides for the expenses of a survey, maps, and drawings; paragraph 2384 provides for additional surveys if deemed necessary; and paragraph 2385 provides for a form of judgment in these words:

"The judgment of the court shall define and designate the true boundary between the two counties, and shall direct that the same be suitably marked in such manner as the court may deem proper, and the cost of such marking shall be borne by the two counties equally, or in such proportions as the court may direct."

The defendant does not question the findings by the referee of the existence of the jurisdictional fact of a disputed boundary between the two counties. The board of supervisors of

plaintiff county in 1907 officially tried, and from time to time since has endeavored, to get the board of supervisors of defendant county to join in the rectification of the boundary line between them by another survey thereof. Resolutions reciting that the 1889 survey was erroneous were passed and transmitted to the supervisors of the defendant county, with the request that another survey be had, to the end that the true boundary line separating them should be located upon the grounds, and these requests were all ignored or refused by the defendant. It was not only necessary that a disputed boundary be alleged in the complaint, but it was also essential that it be sustained by competent evidence. It is settled that the boundary was in dispute, and had been since 1907, when it was discovered by the board of supervisors and other officials of Yuma county "that the true boundary line as defined by statute was not defined and marked by said survey."

The finding is that the line surveyed and marked in 1889 "is not the true line separating said counties as prescribed by statute, but is something more than four miles west of the meridian line 113 degrees 20 minutes west longitude." It is the contention of defendant that the line located in 1889 is the true boundary line notwithstanding, and that it should stand. This may not be for the reason that Act No. 42, Laws of 1889, does not declare that the line thereunder surveyed and marked shall be the true boundary between the counties. The only direct and positive declaration as to the true boundary line is that it is meridian line 113 degrees 20 minutes west longitude, and we think, when the legislature later made it the duty of this court to define and designate the true boundary, it meant the boundary line as prescribed by statute. Any other, however long recognized or located, would not be the true boundary. It might be the practical or working boundary as long as acquiesced in or acted upon, and binding to that extent, but it would never be the true boundary, the one fixed by statute, and the one we are enjoined by law to define and designate.

In view of the language of our statute (paragraph 2385), an observation of SHAW, J., in *Trinity County* v. *Mendocino County, supra,* 151 Cal. at page 288, 90 Pac. at page 688, may be quoted for light. He said:

"In any event, the location of the county lines is a political question, to be settled by the legislative power of the state,

and subject to change from time to time as the legislative power may direct. If the line as fixed in accordance with its directions is inaccurately located by the person whom it has directed to make the survey and place the marks, the correction of the error lies with the legislature and not with the courts, *unless it has provided that the courts shall determine the true location, which it has not done.* (Italics ours.) ''

Our legislature has provided that we shall define and designate the true boundary line. It has imposed a duty upon the supreme court which the legislature of California did not impose on the courts of that state. Even though another boundary line than the true one may have been adopted by the legislature through its agents, it possessed the power to change it back to the true boundary line as fixed by statute. It may change county boundaries as often and as much as it chooses, and, when it manifests its intent that the true boundary shall be determined regardless of any practical or working boundary that may have been adopted by the counties, there is nothing to do but to locate the true boundary.

The defendant acknowledges in its answer that the true boundary is the one fixed by the statute that created it in 1871, for it says:

''Answering plaintiff's first cause of action, defendant alleges that the true boundary between said counties is on 113 degrees 20 minutes west longitude, as fixed by law.''

It is the true boundary, and not some other, although recognized and acquiesced in, that the court must define and determine.

We do not, however, believe that the plaintiff should be permitted to recover on its second cause of action. As heretofore said, the two counties, having made a joint survey of the boundary between them, to which they mutually agreed, and having, by and through their officials and agents, acted upon the line so located in the administration of the law ever since, the transactions pending the status thus invited and established should not be disturbed.

For the purposes of the administration of the law, both civil and criminal, as well as the levy and collection of taxes, the boundary agreed on should be binding at least until the true boundary is lawfully ascertained.

As was said in *Board* v. *Head, supra:*

"The boundary lines of counties are matters of public concern; and when they have been run, and their position ascertained, by public authority, the actual line, though it should vary from the descriptive boundary designated in the statute, must be conclusively binding upon all private individuals and county officers, until a different position is given to it by the public authorities."

Nor should the fact that the plaintiff, in 1907, disputed the right of defendant to exercise jurisdiction over the strip involved, in and of itself, affect their relations thereto, as the status could only be changed in pursuance of the law.

The rectification of the error in the survey of 1889 could have been provided for by the legislature at an earlier date, and thus restored to plaintiff jurisdiction over the disputed territory. Whether, in the absence of legislation, other remedies were open to plaintiff, such as *quo warranto* or injunction, we do not deem it necessary to decide, as they were not resorted to or invoked by plaintiff.

Judgment should go against the plaintiff on the second cause of action. However, we think the plaintiff is entitled to judgment defining and designating the true boundary line between it and defendant county, but, before this can be done, it will be necessary to have made an official survey of meridian 113 degrees and 20 minutes west longitude, the prescribed statutory line between the two counties, and, inasmuch as the law requires that the line so surveyed shall be suitably marked upon the ground, we will defer making the order for a survey for 20 days, pending which time counsel are invited and requested to submit suggestions as to the form and contents of the order, especially as to how and with what material the line shall be marked.

In the matter of disbursements and expenses, including the fees and expenses of the referee, and the expenses of surveying and marking boundary, we think it but fair and just that they be borne by the two counties equally, Yuma county to recover her costs in this court; and it is so ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.