## BOARD OF COUNTY COMMISSIONERS OF CROOK COUNTY v. BOARD OF COUNTY COMMISSIONERS OF SHERIDAN COUNTY.

COUNTIES—BOUNDARIES—DESCRIPTION—LOCATION—BOUNDARY LINE BETWEEN ADJOINING COUNTIES—DISPUTE CONCERNING LOCATION—PROCEEDING TO SETTLE—EX PARTE SURVEY—CONCLUSIVENESS—STATUTORY RECOGNITION—ACQUIESCENCE.

1. The fact that a certain meridian of longitude is designated by statute as a county boundary line does not render the description uncertain, or the statute ambiguous.

2. The fact that it is difficult to locate the boundary line between adjoining counties, because described as a certain meridian of longitude, adds nothing to the force or effect of an *ex parte* survey by one of the counties.

3. To entitle a survey of a county boundary line to be regarded as conclusive, it must have been made by authority of law, or · subsequently adopted or ratified by law as marking the true line, or the circumstances must be such as to preclude a dispute respecting its accuracy.

4. A county cannot by an *ex parte* survey, without authority of law, change its boundary line from that declared by statute or bind an adjoining county or the public.

5. In 1885, without statutory authority, Crook county caused a survey to be made of its west boundary line, which was also the east boundary line of the adjoining county of Johnson. A statute enacted in 1886 provided for the definite settlement of any disputed boundary line between

adjoining counties by a joint survey, or, upon a disagreement in the result thereof or a refusal by a county to join in a survey, then by a survey under an order of court, and, by a proviso in Section 1, it was declared that the provisions of the act should not apply to the line between Crook and Johnson counties "until the county surveyor of Johnson county shall have made a survey of said line, when, if the survey made by Crook county and the survey made by Johnson county shall not be made to agree, it will be settled in the same manner as other disputed boundary lines provided by this act." In 1886, after the passage of the act Johnson county's surveyor made a survey of the line and reported it as disagreeing in every particular with the Crook county survey, although he started from the same initial point as the southeast corner of the county. *Held,* (1) That by the proviso in the act of 1886 the former Crook county survey was not adopted or recognized as conclusively establishing the line, but only until a survey by Johnson county; and that to the extent that the latter county's subsequent survey disagreed with the Crook county survey, the line thereupon came within the operation of the act. (2) That the line excepted from the provisions of the act by the proviso was only the line separating Johnson and Crook counties, so that upon the creation and organization of Sheridan county out of the northern part of Johnson county, that part of the line formerly dividing Crook and Johnson which had become the boundary line between Sheridan and Crook counties was taken out of the exception, and came within the operation of the act, even if Johnson county had not previously made a survey of the line. (SCOTT, J., dissenting.)

6. In 1888 Sheridan county was created and organized out of the northern part of Johnson county, its boundaries being described as commencing at the northwest corner of Crook county, and running thence south along the western boundary line of Crook county, &c. *Held,* that such description referred to the northwest corner and the western boundary line of Crook county as defined by law, and not to such corner and line as located by any particular or supposed survey theretofore made by Crook county. (SCOTT, J., dissenting.)

7. Sheridan county having been created and organized out of the northern part of Johnson county in 1888, with its east boundary line described as the west boundary line of Crook

county, which line was defined in the act creating Crook county as the 106th meridian of longitude west from Greenwich, and a dispute having arisen between Sheridan and Crook counties concerning the location of such line, it is no defense to Sheridan county's application under the statute to have the location of the line as defined by law definitely settled by a survey under an order of court, that in 1885, while the line was a part of the boundary between Johnson and Crook counties, an *ex parte* survey thereof was made by Crook county, and by the statute enacted in 1886 under which the proceeding is brought the line between Johnson and Crook counties was excepted from its provisions until a survey thereof by Johnson county, or that the statute creating Sheridan county defined its east boundary line as running along the western boundary line of Crook county. (SCOTT, J., dissenting.)

8. After an *ex parte* survey by Crook county of the line dividing that county from Johnson county a part of the line became the boundary line between Crook and Sheridan counties upon the creation and organization of the latter county out of the northern part of Johnson county in 1888. The territory in the vicinity of such boundary line was sparsely settled and consisted mostly of public lands of the United States, so that there was little occasion for any dispute concerning the location of the line until a few years prior to an application under the statute by Sheridan county to have the location of the line dividing Sheridan and Crook counties definitely settled by a survey under an order of court. *Held,* that there had not been such a long acquiescence by Sheridan county in the line as previously located by the Crook county survey as to render it bound by such location.

[Decided March 29, 1909.]                    (100 Pac. 659.)

ERROR to the District Court, Sheridan County; HON. CARROLL H. PARMELEE, Judge.

A dispute having arisen concerning the location of the boundary line between Sheridan and Crook Counties, the former county applied to the district court pursuant to the statute to have the line definitely settled by a survey to be made by a competent surveyor appointed by the court for that purpose. The facts are stated in the opinion. From a

judgment granting the application of Sheridan County for a survey of the line as it was defined by law, Crook County prosecuted error.

 *M. L. Gordon,* County Attorney of Crook County, for plaintiff in error.

The Hanson survey of the west boundary line of Crook County became the true boundary of said county from the time that it was made in 1885.  There being no law prescribing how county boundary lines should be surveyed and no method by which one county could require another to join with it in a survey of a common boundary it was necessary for Crook County to make the survey to determine the limits of the jurisdiction of its courts and public officers, as well as the place for registration of title deeds, &c.  The survey was, therefore, within the authority of Crook County. By the exception of. the line between Crook and Johnson Counties in the act of 1886 (Laws 1886, Ch. 7, Sec. 1 ; R. S. 1887, Sec. 670) the legislature qualifiedly recognized the Hanson survey temporarily at least as the boundary line, and expressly protected it until Johnson County should survey the line and take official action thereon.  Although the ·deputy county surveyor of Johnson County thereafter surveyed a line, and reported it to disagree with the Hanson survey, the Johnson County board never took any action in the matter but tacitly accepted the Hanson survey and acted upon it as marking the boundary between the two counties; this non-action probably resulted from the fact that the two surveys having started from the same initial point, the variation between the two magnetic needles used was no greater than was to be expected.  From the moment that the act of 1886 was enacted the Hanson line became the legal boundary line for all purposes.  There has been no official action by which a different line has been legally established; and it was, therefore, a legal boundary line at the time Sheridan County was created.  (Board v. Head, 3 Dana (Ky.) 489.)

The legislature, in describing the boundaries of Sheridan County, must have had in mind the Hanson line and regarded it as an established line, for, otherwise they would not have specifically designated as the starting point the northwest corner of Crook County and as the east boundary the west boundary line of Crook County. Then by stating that the new county was to be composed of all that portion of the "present County of Johnson" lying north of a designated line, the legislature emphasized that they meant a county, viz.: Johnson County, as it then existed, with its boundaries marked on the ground. There was no other known, recognized or contemplated northwest corner, or west boundary line of Crook County than the corner and line established by the Hanson survey, and no steps had been taken to ascertain any other. Sheridan County, therefore, has no right to complain of the Hanson line, since the act creating it adopted that line as its eastern boundary. Although the proviso of the act of 1886 is omitted from the revision of 1899, it was operative when Sheridan County was created, and its omission from the revision cannot be held to have repealed it.

We contend, therefore, that the Hanson survey of 1885 became the lawfully established boundary line between Johnson and Crook Counties, and, therefore, between Sheridan and Crook Counties. (Eureka Co. v. Lander Co., (Nev.) 26 Pac. 63.) The 106th meridian never was the eastern boundary line of Sheridan County. It is only by implication that said meridian can be regarded as the boundary, and upon the assumption that the Hanson line was established upon said meridian.

Crook County since 1885 having exercised dominion over all the territory within the boundaries marked by said survey those boundaries should be regarded as the true boundaries. (Edwards Co. v. White Co., 85 Ill. 390.) Although the monuments on the survey seem to have been lost for a time, three of the monuments have since been discovered, and it cannot be said that the location of the line is in doubt.

The present proceeding is purely statutory; there can be no dispute concerning the line in question since the line of the Hanson survey is the true line and a resurvey of it is unnecessary. Should either county refuse, however, a joint survey of the Hanson line then a proceeding under the statute might be proper. But Sheridan County has no right to have a different line surveyed and marked as the boundary. The reasonable interpretation of the statute is that the court may order a resurvey of the disputed boundary line, but not to establish a new line, that is to say not to correct an old survey but to find its location; not to determine where an old line ought to be but to discover where it is actually marked upon the ground by actual survey. (Jones v. Powers, 65 Tex. 207.) Considering the difficulty of locating the meridian, and the fact that three pairs of counties will each be affected by any change along the line in question, there would be a prospect of continual dispute as to which portion of the line is on the meridian, if the meridian instead of the Hanson survey is to be regarded as the true line. Surely it was not the legislative intention by the act of 1886 to create a possibility of endless confusion. (Edwards County v. White County, *supra*; Hecker v. Sterling, 36 Pa. St. 423.) The constitution declares that the several counties of the territory as they exist at the time of the admission of the state are to be the counties of the state. Under this provision Crook County became one of the declared counties of the state, and, its boundaries having been surveyed and marked, it became such county with said surveyed boundaries, and the constitution must have referred to the county with its boundaries so marked; and it follows that the boundaries of Crook County cannot now be changed except by a constitutional amendment.

*Charles A. Kutcher,* County Attorney of Sheridan County, for the defendant in error.

The only material question in controversy is whether the survey of the west boundary line of Crook County in 1885

which was made solely at the instance of Crook County amounted to a legal establishment of said line so as to be conclusive upon complaining county. The 106th meridian was originally designated as the western boundary of Crook County. The act creating Sheridan County made its eastern boundary to coincide with the western boundary of Crook County. Crook County's western boundary was never changed from the meridian designated by law unless it was changed by the so-called Hanson survey of 1885. That survey was purely *ex parte*. The proviso in the act of 1886 did not amount to a recognition of the Crook County survey as an established line. If it was so intended the legislature would have declared it an established line by appropriate language so as to make further surveys and disputes unnecessary. The proviso, however, was omitted from the revision of 1899, and was, therefore, repealed by virtue of Section 2713 of that revision. Moreover, the line had been surveyed by the deputy surveyor of Johnson County and his survey disagreed with the Hanson survey; and thereupon the line in question was clearly brought within the provisions of the act. Again, the proviso relied upon refers only to Johnson and Crook counties and could have had no bearing upon that part of the line that became Sheridan County's eastern boundary after its creation and organization. Sheridan County certainly is not required to wait until Johnson County should make a survey if she has not made one. Sheridan County became a separate and distinct body in 1888, and was not bound at any time by the exception contained in the proviso.

Had the Hanson survey been authorized and made under such circumstances as to have amounted to a legal establishment of the division line between Crook and Johnson Counties, then, even if it was not upon the meridian it would have constituted the authenticated line, but it was never authorized, has never been participated in, nor ratified by either Johnson or Sheridan Counties. It is not, therefore, an authenticated survey. The constitutional dec-

laration as to existing counties clearly did not authenticate any county boundary survey, but if boundaries were referred to at all they would be those defined by law.

The argument that the location of the Hanson line is not in doubt and, therefore, the boundary line is not in dispute begs the whole question by assuming that the Hanson survey is authentic and conclusive, which is the very proposition here in issue. We are not seeking to correct an old survey or establish a new line, but to have the true line definitely and conclusively established. We concede the rule that where a county boundary line has once been legally and authentically established, even though erroneous, it cannot be subsequently changed without consent so as to affect vested rights. But the case at bar does not come within that rule, because no legal and authentic survey of the line in question has ever been made. The cases cited in the brief of plaintiff in error are not applicable to the facts here. The point urged that other counties might be interested in parts of the line surveyed by Crook County and, therefore, that confusion might arise, constitutes no objection to the application by Sheridan County in this case. Suppose the line might be broken by different surveys of those parts dividing different counties? It would make no difference so long as the line of each survey would be legal and authentic. Sheridan County is only concerned in having an authentic and conclusive survey of the line dividing it from Crook County.

Neither is there any merit in the argument that if the interpretation by the district court of the statute in question is to be sustained endless dispute and litigation will follow. Is the court to deny the application in this case merely because at some future time the boundary line might again be in dispute? The operation of the statute under which the application is presented does not tend to create disputes or foment litigation, but effectually quiets them and assures peace and good order between counties engaged in disputing the location of boundary lines. The

position taken by Crook County is the one that would continue strife and dissension. The statute of limitations has no application to this kind of a proceeding. It is well settled that an *ex parte* survey of a boundary line is not binding upon the party not consenting thereto. (5 Cyc. 944, 965.)

POTTER, CHIEF JUSTICE.

This is an action brought by the board of county commissioners of Sheridan County for the purpose of having the location of the boundary line between that county and the adjoining county of Crook definitely settled in the manner provided by statute. (Rev. Stat. 1899, Secs. 994-1001.) The cause was submitted to the district court upon an agreed statement of facts, and thereupon a judgment was rendered in favor of Sheridan County, the plaintiff, granting its application for the appointment of a competent surveyor to survey the disputed boundary line. Crook County brings the cause to this court on error, assigning as error several of the findings with reference to the boundary line in dispute, and the right of Sheridan County to have the same definitely settled by a survey under the order of the court, the assignments of error charging in substance and effect that the findings, decision and judgment are not sustained by the facts and are contrary to law.

The statute provides that in case a dispute arises between adjoining counties as to the location of the boundary line between them the commissioners of each county shall, by order, direct and cause the county surveyor thereof to proceed to survey the same, and such surveyors are thereupon required to make such survey in conjunction with each other, at some time to be agreed upon between the commissioners of such counties. In so far as the surveyors agree in making such survey they are required to mark the line as located by them in a designated manner, and make a joint report thereof to be filed with the county clerk of each county. In case they do not agree as to location of the line,

or any part thereof, they are to make separate reports as to the parts of the line not agreed upon. After the filing of such separate reports showing a disagreement, it is provided that the commissioners of either county "desiring to have such boundary line definitely settled" may apply to the district court sitting within and for their county, setting forth the proceedings had up to that time, and attaching a copy of the records and reports concerning the matter filed with the county clerk. Provision is made for notice to the other interested county, and a hearing of the matter, whereupon, it is declared that if the court finds the proceedings to have been regular and in pursuance of law, it shall be its duty to appoint some competent surveyor, resident within the state, and not residing within either of the interested counties, to survey the disputed line, or such part thereof as to which the county surveyors shall not have agreed. The survey and report by the one so appointed may be set aside for insufficiency or indefiniteness, and another competent surveyor appointed, but until set aside it is declared that "the boundary line located as shown by said report shall be conclusive."

It is further provided that in case of the refusal of the commissioners of either county to cause a survey to be made by their surveyor, upon request of the commissioners of the other interested county, or if the surveyor of such county shall refuse to make the survey in conjunction with the surveyor of the other county, or if the commissioners of the respective counties cannot agree upon a time for such survey, then in either or all of said cases, the county desiring a definite settlement of the boundary line may apply to the district court in the same manner as where there has been a disagreement upon a joint survey.

The County of Crook was created by an act of the territorial legislature approved December 8, 1875. Its boundaries were defined in Section 1 of the act as follows: "Commencing at the northeast corner of the Territory of Wyoming, thence south along the boundary line between said

territory and the Territory of Dakota, to the forty-third degree and thirty minutes north latitude, thence west along said latitude, to the one hundred and sixth meridian of longitude, west from Greenwich, thence north with said meridian of longitude to the southern boundary of the Territory of Montana, thence east along said boundary to the place of beginning." (Comp. L. 1876, p. 198.)

By Section 2 of the same act another county was created to be known by the name of Pease, and the boundaries thereof were described as follows: "Commencing at the northwest corner of Crook County, thence south along the western boundary line of said county to the southwest corner thereof; thence west along the forty-third degree and thirty minutes north latitude to the Big Horn river; thence down the latter stream to the southern boundary line of the Territory of Montana; thence east along said line to the place of beginning."

In 1879 Section 2 of said act, which created and defined the boundaries of Pease County, was amended by striking out the word "Pease" and inserting in lieu thereof the word "Johnson," thus changing the name of the county to Johnson, by which name said county was afterwards organized and has since been known. (Laws 1879, Ch. 31, Sec. 1.) Thus Crook and Johnson Counties adjoined each other, the western boundary of Crook becoming the eastern boundary of Johnson. The said act of 1875 provided a method for the organization of the two counties thereby created, but such organization did not occur until several years thereafter. Both counties had, however, completed an organization prior to the passage of the act of 1886 for the settlement of disputed county boundary lines, and prior to the time when, as shown by the agreed facts, a survey, known as the Hanson survey, of the boundaries of Crook County, was made under contract with the commissioners of that county.

In 1888 Sheridan County was created out of the northern part of Johnson County by an act of the territorial legis-

lature, and pursuant to the provisions of that act the county was organized the same year. Its boundaries were described in the act as follows:

"Commencing at the northwest corner of Crook County; thence running south along the western boundary line of Crook County to a point three miles north of the thirteenth standard parallel; thence west along a line three miles north of, and parallel to, said thirteenth standard parallel to the intersection of said line with the center of the channel of the Big Horn river; thence northerly down the center of the channel of the Big Horn river to the northern boundary line of the Territory of Wyoming; thence easterly along said northern boundary line to the place of beginning, being all that portion of the present county of Johnson, Territory of Wyoming, lying north of a line three miles north of, and parallel to, said thirteenth standard parallel north."

In 1890 the County of Weston was created by enactment of the last territorial legislature and organized from the southern part of Crook County, the dividing line between Weston and Crook being described in the act creating Weston County as the twelfth standard parallel north. The western boundary line of Weston County was defined, and remains defined, as the one hundred and sixth meridian of longitude west from Greenwich, thus adopting the same line that was used to define the western boundary of Crook County. (R. S. 1899, Sec. 993.) The western boundary line of Crook County is still described in the statutes as said one hundred and sixth meridian of longitude west from Greenwich. (Id., Sec. 985.)

The agreed statement of facts is as follows:

"1. That the boundary line between Sheridan and Crook counties is now and for two years last past has been in dispute.

"2. That no joint survey of the said boundary lines has ever been made by said counties, except as hereinafter explained.

"3. That in the year 1888 Sheridan County was organized from the northern part of Johnson County and in the year 1890 Weston County was organized from the southern portion of Crook County, leaving the southern half of what still remains of Crook County and about the northern half of what still remains of Johnson County lying contiguous to each other, thus forming from the original territories of Crook and Johnson Counties three pairs of counties on opposite sides of said 106th meridian as follows: Crook and Sheridan, Crook and Johnson, and Weston and Johnson.

"4. That long prior to the organization of Sheridan and Weston Counties the said 106th meridian had been designated by statutes as the boundary line between the then original territories of Crook and Johnson Counties.

"5. That in the year 1885 Hanson Bros., surveyors, were duly authorized by the board of county commissioners of Crook County to survey the southern and western boundaries of Crook County; that under a contract with Crook County they surveyed the then southern boundary of Crook County, starting at a point established by said Hanson Bros., and the then county surveyor of Laramie County at the point of intersection of the 43° 30" N. Lat. with the east boundary of the State of Wyoming as established by H. P. Tuttle and reported in his astronomical report on the boundary line between Wyoming and Dakota, and running west, being joined in said survey across Laramie County by the then county surveyor of Laramie County and across Albany County by the then county surveyor of Albany County; that at the western terminus of said southern line survey, said Hanson Bros. and the said Albany County surveyor made, set and marked a hardwood monument to represent the point of intersection of the 43° 30 min. N. Lat. with the 106th meridian of longitude west from Greenwich, intending said mounment to represent the then southwest corner of Crook County and the southeast corner of Johnson County; that field notes of said survey were made, cer-

tified and filed in Crook County, by Hanson Bros., showing that wooden monuments were set and marked on said survey at intervals of half a mile; that said Hanson Bros., by A. P. Hanson, filed a sworn statement with the county clerk of Crook County to the effect that said survey was accurate and satisfactory in every way, and that not a single post of said survey was set under protest; that said southern line survey of Crook County was formally accepted, approved and ratified by Crook County.   But Sheridan County does not admit the accuracy or authority of said southern line survey, but disputes the same, contrary, however, to the contention of Crook County in said matter.

"6.   That in October, 1885, said Hanson Bros. under a contract with Crook County began the survey of the west boundary line of Crook County, starting at the point theretofore established by said Hanson Bros. and said Albany County surveyor as the point of intersection of the 43° 30 min. N. Lat. with the 106th meridian of longitude west from Greenwich, and running north on the supposed meridian to the Montana line; that said Hanson Bros. made field notes of said survey and certified and filed the same at the office of the county clerk of Crook County, showing that on said survey monuments, some wood and some stone, were set at intervals of half a mile and, except where impracticable, were plainly marked 'Crook Co.' on the east face and 'Johnson Co.' on the west face and each of said monuments was also plainly marked to represent its distance from the initial point of said survey; that the board of county commissioners of Crook county formally accepted, approved and ratified said survey; that said Hanson Bros., by A. P. Hanson, also filed with the county clerk of Crook County his sworn statement in support of said field notes.   But Sheridan County does not admit the accuracy or authority of said western line survey of Crook County or that the same was or is binding upon either Johnson County or Sheridan County and Sheridan County disputes the accuracy and authority of said survey and

denies that said survey was or is binding upon either Sheridan County or Johnson County, contrary, however, to the contention of Crook County in said matter.

"7. That there is no record in either Johnson County or Sheridan County showing that either of said counties ever authorized, accepted, approved or ratified said Hanson Bros. Survey of said western boundary line of Crook County, except that in 1886, one Loback, the then deputy county surveyor of Johnson County, under order of the board of county commissioners of said county, made a survey of said line, and in doing so started from the same initial point at the southwest corner of Crook County from which said point said Hanson Bros. started in making said western line survey of Crook County.

"8. That in August and September, 1886, C. T. Loback, the then deputy county surveyor of Johnson County, under order of the board of county commissioners of said county made a survey of the boundary line between the then original territories of Crook and Johnson Counties, and that in making his said survey he selected and used as his initial point the identical point established by said Hanson Bros. and the Albany County surveyor to represent the point of intersection of the 43° 30 min. N. Lat. with the 106th meridian west from Greenwich, of which point reference is made in paragraph No. 5 of these stipulations, and which point said Hanson Bros. used as the initial point of the said Hanson Bros. survey of the aforesaid western boundary line of Crook County; that said Loback surveyed north from said point to the Montana line differing from the said survey made by said Hanson Bros. of said boundary line; that said Loback thereafter reported to his county board that his said survey did not agree in any particular with the said Hanson Bros. survey of said line, and that he, therefore, set no monuments on said survey, and he further stated in his said report that the said line would have to be established by a third party. All of which more fully appears from the field notes of said survey and above men-

tioned statement of said Loback recorded at pages 242 to 287, both inclusive, of Book 1, Surveyor's Record, Johnson County, Wyoming.

"9. That until within the last four or five years there has been little occasion for any dispute over the said boundary line, as nearly all of the land within the immediate vicinity of the boundary between the two counties, wherever it may be located, is government land, excepting a few miles of the right of way of the Burlington Railroad, and a few hundred acres of land belonging to John Creswell and Wm. Creswell.

"9a. That at the present time there is a strip of land about three miles in width extending the full length of the eastern side of Sheridan County which is in dispute, each county claiming that said strip lies within its borders; that since 1903 both counties have collected taxes from property lying within this strip of disputed territory; that prior to 1903 Crook County collected taxes on nearly all property in this strip; that until the year 1905 Crook County collected the taxes on the greater portion of the railroad tract lying within this disputed strip, and that since 1903 Sheridan County has collected most of the taxes from lands within said strip belonging to private persons; that since the year 1905 the C. B. & Q. R. R. Company has held the taxes on this piece of railroad in this strip of territory, pending the termination of this boundary dispute. That in the years 1905 and 1906 the state board of equalization, under protest of Crook County, assessed this disputed strip of railroad in Sheridan County, basing said action on the survey of 1905 made by Crook and Sheridan Counties.

"That for at least two years last passed the so-called Hanson Bros. survey between Crook and Sheridan Counties has been lost and obliterated until the month of September, 1906, when Mr. A. P. Hanson pointed out three monuments of the survey made by him near the Burlington Railroad tract, intersecting the said boundary line.

"10. That in August, 1905, a joint survey of this boundary line was made by the surveyors of Crook and Sheridan Counties in conjunction with each other, by direction of the boards of county commissioners of the respective counties; that said surveyors found a location, as nearly as they could, and placed a monument on the Burlington Railroad where the same intersects the said survey, but they made no field notes of said survey and they set no monuments whatsoever on said survey except one stake at the point of intersection of said survey with the C. B. & Q. R. R. and so reported to their respective boards, and they each further reported to their respective boards that they could not correctly locate said meridian or find any monuments on the said Hanson Bros. survey of the said western boundary of Crook County; that Sheridan County was willing to accept said joint survey but that Crook County, on the report of its surveyor, thereupon refused to accept it; that at the present time Sheridan County contends that the true boundary line is situated at the point indicated by the surveyors of Sheridan and Crook Counties as aforesaid, and Crook County contends that the boundary line is situated on the line surveyed by said Hanson Bros. in 1885.

"11. That there is no known record anywhere in existence showing that there was ever any survey made of the said boundary line between the original territories of Crook and Johnson Counties or any portion thereof, or between Crook and Sheridan Counties, or any portion thereof on which any monuments whatever were set and marked indicating a boundary line, except the said Hanson Bros. survey of the said western boundary line of Crook County, made in 1885 as hereinbefore set forth.

"12. That for over two years last past efforts have been made by the two counties to reach an agreement whereby the boundary dispute might be settled, all of which have failed; that on the 3rd day of April, 1907, the board of county commissioners of Sheridan County passed a resolution as set forth in the petition filed by Sheridan County,

and that Crook County thereafter refused the request, by a resolution as set forth in the answer filed herein by Crook County; that said counties cannot agree and do not now agree upon the location of said boundary line and that said dispute cannot be settled by mutual agreement; that said boundary line is now and has been for more than two years last past in dispute; that Sheridan County disputes the accuracy and authority of the Hanson survey, and Crook County refused to recognize the so-called Loback survey, and the so-called joint survey of the boundary line between Crook and Sheridan counties made in 1905, as aforesaid."

The statute providing for the definite settlement of the location of the boundary line between adjoining counties was enacted in 1886, and has not been since amended unless the omission of one provision from the Revised Statutes of 1899 should be held to operate as an amendment in that particular. The provision referred to is much relied on in this case by Crook County, as having ratified or recognized the Hanson survey. It was incorporated in the act as a proviso at the end of Section one, and read as follows:

"*Provided,* That the provisions of this act shall not apply to the county line between Crook and Johnson Counties, until the county surveyor of Johnson County shall have made a survey of said line, when, if the survey made by Crook County and the survey made by Johnson County shall not be made to agree, it will be settled in the same manner as other disputed boundary lines provided by this act."

In the Revised Statutes of 1887 the word "act" of this provision was made to read "chapter," the said act of 1886 constituting a separate chapter of that revision.

Upon the facts aforesaid and the statutes material to the controversy, it is contended by the plaintiff in error (Crook County) that the Hanson survey of its west boundary line in 1885, should control in the location of that line,

or, in other words, that the line so surveyed and marked constitutes the true boundary line between the two counties, irrespective of the question whether it accurately locates and marks the line as described in the act creating Crook County. That condition is claimed to have resulted from the fact and circumstances of such survey, a recognition thereof by the legislature through the above mentioned exception contained in the act of 1886, and the reference in the act defining the boundaries of Sheridan County to the northwest corner and the western boundary line of Crook County as constituting respectively the northeast corner and eastern boundary line of Sheridan County.

What was the effect of the Hanson survey when made? It was made without any provision of law authorizing it, and upon the sole authority of the commissioners of Crook County. At that time there was no statute providing for an official or other survey of county boundaries. The boundaries of Crook County were defined by statute which was free from ambiguity. The only necessity for a survey would be to practically locate the boundaries, that is to say to ascertain and mark the location of the same upon the ground. There was no uncertainty in the description of the western boundary line. The fact that a certain meridian of longitude was designated as the boundary did not render the descriptive line uncertain, or make the statute ambiguous so as to require construction through the aid of extrinsic circumstances. Although a line so described may be difficult of practical location, nevertheless, when employed to define a boundary line, it constitutes the true line to be followed in making a practical location. The use of meridians of longitude in the statutory description of boundary lines of geographical subdivisions has not been uncommon. Such lines have been frequently employed in defining the boundaries of counties and states. The act of congress organizing the Territory of Wyoming defined its eastern and western boundaries as respectively the twenty-seventh meridian of longitude west from Washington, and

the thirty-fourth meridian of west longitude; and our state constitution defines said boundary lines in the same manner.   An interesting and instructive case illustrating the employment of this method of description is that of U. S. v. Texas, 143 U. S. 621, and 162 U. S. 1.   The difficulty in actually locating such a line, certain in description, cannot be held to impart to a survey thereof any greater force and effect than it would otherwise have.   It is clearly no more difficult of location now than when the survey was made by Crook County, and the argument seems to us without force, that the effect or conclusiveness of the survey caused to be made by Crook County is controlled in any degree by a consideration of the fact that an astronomical line was designated as the western boundary of the county, or the dividing line between the two adjoining counties.

It is clearly not the law that one party interested in a division line may settle its location without the consent or acquiesence of the other interested party or parties.   Between individual owners of adjoining lands a private survey of the dividing line is only effective in establishing its location as between the parties thereto.   (5 Cyc. 944; U. S. v. Murray, 41 Fed. 862; Kampman v. Heintz, (Tex.) 24 S. W. 329.)   As said in a New York case "to constitute a practical location of a line or lot requires the mutual act and acquiesence of the parties."   (Corning v. Troy &c. Factory, 44 N. Y. 577.)   To entitle a survey of a county boundary line to be regarded as conclusive, it must have been made by authority of law, or subsequently adopted or ratified by law as marking the true line, or the circumstances must be such as to preclude a dispute respecting its accuracy.   (Marsalis v. Garrison, (Tex. Civ. App.) 27 S. W. 929.)

It is not to be doubted, we think, that, without a statute to that effect, it was proper for Crook County, as well as any other county, on its own account, to cause a survey to be made of its boundaries, as the same are defined by

law, for the guidance, temporarily at least, of its own officers in the exercise of their respective duties, and that the fact and details of a survey so made would be admissible in evidence, when competently introduced, to show the location of the line, if material in a collateral proceeding. But under such circumstances, it is obvious that while such evidence would be admissible, and perhaps sufficient *prima facie* to establish the location of the boundaries, it would not, standing alone, be conclusive, for manifestly no county could by an *ex parte* survey change its boundary line from that declared by law, or bind an adjoining county or the public.

In all the cases cited by counsel for plaintiff in error, in support of the position that the Hanson survey is conclusive, where a common boundary line was in dispute between adjoining counties, it appears that a survey, or a joint survey, had been made by express legislative authority. For instance, in Trinity Co. v. Mendocino County, 151 Cal. 279, the survey relied on had been provided for by a statute requiring the appointment of a commission of survey by the counties concerned, which provided that "The lines run out, marked and defined as required by this act are hereby declared to be the true boundary lines of the counties named herein." In County of Eureka v. County of Lander, (Nev.) 26 Pac. 63, the statute creating Eureka County out of Lander County provided that the new county should establish the line separating it from the parent county at its own expense. Such line was to commence on the north boundary line of Lander County, equi-distant between the northeast and northwest corners of that county. The situation of the northwest corner was in dispute, the western boundary line of Lander County having been designated as the fortieth meridian, which was also the eastern boundary of the adjoining County of Humboldt. The position of the line or boundary had been previously established by a joint survey of the county surveyors of the respective counties, in pursuance of a statute requiring the establish-

ment in that manner of disputed boundary lines between counties. It was therefore held that in defining the boundaries of Eureka County, the legislature had reference to the northwest corner of Lander County which had been established pursuant to law by the joint survey of the surveyors of Lander and Humboldt Counties. In Davidson Co. v. Cheatham County, (Tenn.) 63 S. W. 209, the disputed line had been run by surveyors appointed for that express purpose by an act of the legislature.

Board v. Head, 3 Dana (Ky.) 489, was a case between private parties involving the jurisdiction of a constable in the levy of an execution, and the decision was that when county boundary lines have been run, and their position ascertained, by public authority, the actual line, though it should vary from the descriptive boundary designated in the statute, must be conclusively binding upon all private individuals and county officers, until a different position is given to it by the public authorities. The term "public authority" was there used, we think, in the sense of authorization by law.

In Jones v. Powers, 65 Tex. 207, the principle announced was that when a county line has once been run, marked upon the ground and established *in accordance with law,* it cannot be said to be indefinite, and the court said: "Under all the laws made for the purpose of furnishing a method by which the lines of a county may be actually established upon the ground, it may be held, if the lines have once been definitely fixed upon the ground by an actual survey made, reported and approved, *as required by the statute,* that a county court has no power to direct another survey to be made and thereby establish a boundary line different from the one established at some former period. It is only when it may appear * * * * that the boundary * * 'is not sufficiently definite and well defined' that action to make it definite is authorized."

In a subscequent Texas case the case of Jones v. Powers is cited as authority for the proposition that a survey or

establishment by one county of the line between it and another county, without the observance of a method prescribed by law, would not be binding upon the adjoining county. In the case referred to one of two adjoining counties had caused a survey of the common boundary line, without a notice to the other county, and the court said: "The necessity of such a notice, in order to bind the county in adverse interest, is apparent, because otherwise the proceeding would be wholly *ex parte* on the part of the acting county, and the result such as might be easily contemplated to have been brought about by an exclusive consideration of its own interests." (Marsalis v. Garrison, *supra.*) We do not doubt the good faith of Crook County in having the survey made, or that of the surveyors employed to make it, nor do we consider that there was any other motive on the part of the county or the surveyors than that of locating as accurately as possible the line defined by law as the boundary line of the county. Such survey and location may indeed have been accurate, and for all we know it may be proven so. It may, however, be inaccurate. But that is not the question to be here decided. Sheridan County disputes the correctness of the line as so surveyed and located, and claims the right to dispute it, and to have the location definitely settled pursuant to the statutory provisions. And we hold that unless precluded by legislation or facts occurring subsequent to the survey by Crook County from disputing the line thereby established, Sheridan County would not be bound by it.

While the authorities of Crook County, for the purpose of informing themeslves concerning the location of the county boundaries, and providing some competent evidence thereof, had the right to cause the survey in question to be made, it is evident that any adjoining county possessed the same right, and that a dispute might thereupon arise with reference to the location of a common boundary. The possibility of a dispute so arising, it is safe to say, led to the

enactment of the statute in 1886 for the definite settlement of disputed county boundary lines.

This brings us to a consideration of the question whether the Hanson survey has been rendered conclusive by later legislative recognition. It may be conceded that by the reference to the survey made by Crook County in the provision of the act of 1886, above quoted, excepting the line between Johnson and Crook Counties from the operation of the act, until the occurrence of the event therein specified, the Hanson survey was intended, since no other survey appears to have been made by Crook County. And thus, temporarily, viz.: until a survey by the county surveyor of Johnson County of the line mentioned, the general provisions of the act were declared inapplicable to that boundary line. This, we are willing to concede, recognized in effect the Hanson survey, as to the line between Johnson and Crook Counties, but not as a conclusive establishment of the line even as against Johnson County. That is was not intended to adopt said survey or even to recognize it as permanently or conclusively locating the dividing line is evident from the proviso itself which allowed Johnson County to dispute it upon making a survey. If a survey so made should agree with the Crook County survey, a resort to the procedure prescribed by the act would be rendered unnecessary, for there would then be no dispute legally arising. But if the two surveys should disagree, it was plainly declared that the location of the line should be settled in the manner provided by the act. In other words, the application of the act to the line between the two counties named was conditional only upon the making of a survey by Johnson County which disagreed with the survey of Crook County.

The act in which the provision is found was not concerned with defining boundary lines of counties, but only with the location of such lines as defined by law. And the Hanson survey was not referred to or recognized as making a new western boundary for Crook County, or one dif-

fering from that defined by the statute creating the county, but only as marking or representing on the ground the descriptive line. It is too plain for argument that the line of that boundary remained defined as the 106th meridian of longitude west from Greenwich; and there is nothing in the act of 1886, or any other act that we have discovered indicating any intention to change it. The act of 1886 required the expense of the joint surveys provided for, as well as the survey made by order of the court, to be borne equally by the counties interested. Crook County having but a few months previously caused a survey to be made at its own expense, and Johnson County having made none, it is not unreasonable to suppose that the purpose of excepting the line mentioned was to prevent the forcing of Crook County into the expense of another survey, until it should be ascertained by a survey made by Johnson County that there was ground for questioning the accuracy of the survey made by the former county. The exception went only to the application of the provisions for settling disputes concerning the *location* of boundary lines between adjoining counties, and by the *proviso* Johnson County was denied the right to initiate the proceedings provided for, as to the line dividing it from Crook County, until its surveyor had made a survey of the line. Crook County also, perhaps, was excluded from the benefit of the act, as to the line aforesaid, until the survey thereof by Johnson County. We fail to perceive in the provision making this exception anything that can reasonably be construed as an adoption by the legislature of the Hanson survey as a conclusive location of the boundary line in question.

In 1886, after the passage of the act of that year, the deputy county surveyor, by direction of the commissioners of Johnson County, made a survey of the line, and reported that his survey failed to agree in any particular with the Hanson survey, although it appears that he selected for the initial point of his survey the point established by the Hanson survey to represent the southeast corner of Johnson

County and the southwest corner of Crook County, viz.: the point of intersection of the said 106th meridian with the line of latitude described as the southern boundary of said counties respectively. It does not, however, appear that he independently located or attempted to locate that point. It may be that the selection of said initial point took it out of controversy as between the two counties until a further survey, but as to the remainder of the line, upon which the two surveys disagreed, it seems clear that the right of Johnson County to dispute the location and to thereupon institute a proceeding under the statute to have the same definitely settled became established. It would seem, therefore, that at least so far as the Johnson County survey disagreed with the Hanson survey, the line between Johnson and Crook Counties, as early as August or September, 1886, had come within the operation of the act, and to that extent that the recognition of the Hanson survey implied by the provision aforesaid had ceased.

However that may be as between Johnson and Crook Counties, it is clear that upon the creation and organization of Sheridan County only two years later (1888) that part of the line formerly dividing Johnson and Crook Counties, which had become the dividing line between the latter county and Sheridan County was taken out of the exception, for such exception referred only to the line between Johnson and Crook Counties. Johnson County having been deprived of the northern part of its former territory and Sheridan County having acquired it, the former had no further control over or interest in the line dividing that territory or district from Crook County. It had no authority thereafter to survey the line that had become the eastern boundary of Sheridan County, or to enter into any negotiations or proceedings for locating it. Sheridan and Crook had become the only counties interested in that line. Therefore, had Johnson County made no survey previous to the organization of Sheridan County, the declared exception of the line between Johnson and Crook Counties

(15)

from the application of the act of 1886 would have covered only the line which remained as the boundary line between Johnson and Crook Counties. Had it been otherwise intended the act creating Sheridan County would, it may be presumed, have so declared.

We perceive no reason for holding Sheridan County bound by the failure of Johnson County to act in the matter of the survey aforesaid, should it be said that it had failed, or by the fact that the surveyor of that county selected for his initial point in making his survey, the same initial point of the survey made by Crook County, at least in the absence of a showing that he attempted independently to locate the place supposed to be thereby represented. It is apparent that if Johnson County has failed to act sufficiently to authorize it to dispute the line between it and Crook County, it may still do so, unless precluded by its acquiescence in the line as surveyed by Crook County, but only as concerns the present line between such counties. It cannot dispute the dividing line between Crook and Sheridan Counties, and unless Sheridan or Crook County may do so and seek to have its location definitely determined, the *ex parte* survey already made will have become the boundary. The *proviso* in the act of 1886 was not intended, as we have endeavored to show, even as between Johnson and Crook Counties, to have such a permanent and conclusive effect.

Upon the organization of Sheridan County, the act of 1886 became at once applicable with respect to the lines separating it from adjoining counties, for it must be held that, even without any consideration of a survey by Johnson County, the exception of the line between Johnson and Crook Counties had reference only to the line separating those counties at any time brought in question. As already indicated, to deny the right of Sheridan County to cause a survey to be made of its eastern boundary line would deny the right of any county other than Crook to survey or locate it, for obviously it has not been within the province of Johnson County to survey or locate it, or

to call for its establishment since the organization of Sheridan County.

A little more than two years only had elapsed after the passage of the act of 1886, when Sheridan County was organized. If at that time no survey of the line had been made by Johnson County, it remained incumbent upon it to make such survey before resorting to the general provisions of that act to definitely settle the line dividing it from Crook County, but the exception had not gathered any greater force than it had originally. The Hanson survey, as to the line between Johnson and Crook Counties, remained recognized, if recognized at all, only until a survey by Johnson County. That county made no survey agreeing with the Hanson survey. If it made a survey disagreeing with it, then to the extent at least of such disagreement the line was expressly to be settled through proceedings to be instituted pursuant to the general provisions of the act. In view of this situation, what is the effect of the act, which, in creating Sheridan County, defined its boundaries as commencing at the northwest corner of Crook County and running south along the western boundary of said county?

Counsel for Crook County argues that the reference to a corner and boundary line of Crook County was to such corner and line as theretofore surveyed and located by that county, and counsel goes so far as to assert that the eastern boundary of Sheridan County never was the 106th meridian, notwithstanding the fact that the line of that meridian was and is designated by statute as the true western boundary of Crook County. In so contending the Nevada case of County of Eureka v. County of Lander, *supra,* is largely relied upon. We have shown the distinction between that case and the one at bar. There the adjoining counties of Lander and Humboldt had pursuant to law caused to be surveyed and established and marked upon the ground a line to represent the 40th meridian which was designated by law as the dividing line between said

counties. Such survey not only located the dividing line but also the point on that line constituting the northwest corner of Lander County. The location of this point so established was also accepted by the County of Elko, which was situated immediately north of Lander County. Thus the line dividing Lander and Humboldt Counties, although inaccurately, as subsequently discovered, had been conclusively located and established as between the two counties interested, viz.: Lander and Humboldt, at least until the legislature should otherwise provide. In defining the boundaries of the new County of Eureka, which was created out of the eastern part of Lander County, the initial point was defined as upon the north boundary line of Lander County equi-distant between the northeast and northwest corners of that county; and it was held that as a result of the previous survey and establishment of the western boundary line of Lander County and its northwest corner in accordance with law, the corner so established was to be taken as the one referred to by the act creating the County of Eureka.

We do not question the correctness of the conclusion reached in that case. The facts, however, were entirely different from those disclosed in the case at bar. As already shown there had not been at the time Sheridan County was created and its boundaries defined any conclusive survey or location of the western boundary line of Crook County. The only survey that had been made was purely *ex parte,* and the only legislative reference thereto or recognition thereof was limited as to time, and conditional upon its being made to agree with the survey which might be subsequently made by the adjoining County of Johnson, and further, that such reference and recognition applied only to the line dividing Crook and Johnson Counties. It has been shown that the very provision supposed to amount to a recognition of the survey directed that the line should be settled in the same manner as other disputed county boundary lines in case said survey should not be made to agree with the survey made

by Johnson County. It is, therefore, clear in the opinion of the majority of the court that the western boundary line of Crook County had not been conclusively located, and, since the line had not been previously established or located by law it cannot be reasonably said that the legislature referred to such a line when it designated the western boundary line of Crook County as the eastern boundary line of Sheridan County. In defining the boundaries of Sheridan County by the act in question the legislature was dealing with descriptive lines and was not engaged in locating them, or in providing for their location. The legislature must be supposed to have known that the said boundary line of Crook County was defined by law as the 106th meridian aforesaid, and had it been intended in defining the boundaries of Sheridan County to describe not the true boundary of Crook County, but one located upon the ground by the previous survey, whether accurate or not, such intention would have been expressed by the use of apt language.

To say that the eastern boundary of Sheridan County was never the 106th meridian is to dispute the plain and express declaration of the statute, for the line of that meridian is without doubt the true western boundary of Crook County, and hence must of necessity constitute the eastern boundary of Sheridan County. If the Hanson survey did not locate that meridian line, then it failed to accurately locate the western boundary line of Crook County. There was certainly no authority for Crook County or surveyors employed by it to disregard the statutory description of its boundary line, and there does not appear to have been an attempt to do so. Surveys of county boundary lines are for the purpose only of marking the lines established by the legislature. (People v. Henderson, 40 Cal. 29; Huntingdon County Line, 8 Pa. Super. Ct. 380; s. c. 14 Id. 571; Pardee v. Orvis, 103 Pa. St. 451.) As previously stated, in no statute, certainly not in the act of 1886, is there to be found any provision changing the boundary lines of Crook County, or otherwise defining its western boundary

than as defined in the act creating the county. If that line had been located pursuant to some provision of law so as to conclusively establish its location as against any or every county that might become interested therein, then, indeed, the survey by which that had been accomplished would determine the line, but that would not alter its statutory description.

That the legislature understood that the meridian aforesaid continued to constitute the true western boundary line of Crook County is rendered very clear by the act of 1890 which created Weston County out of that part of Crook County lying south of the twelfth standard parallel north. That act defined the western boundary line of Weston County as the line of the 106th meridian of longitude west from Greenwich, the same line that had been made by statute the western boundary line of Crook County. (Laws 1890, Ch. 47; Rev. Stat. 1899, Sec. 993.)

By reference to the act creating Crook and Pease (Johnson) Counties, it will be noticed that the first section created and defined the boundaries of Crook County, and the second section created and defined the boundaries of Pease County. In defining the boundaries of the last named county, the northwest corner of Crook County was used to describe the initial point, and from thence the boundary was described as "south along the western boundary line of said Crook County to the southwest corner thereof." The northern part of the territory thus set apart as Pease, afterwards Johnson, County was to comprise the new county of Sheridan, and in defining its boundaries, the same language was employed as in the earlier act in describing the initial point and the course south therefrom, viz.: from the northwest corner of Crook County, along its western boundary line to its intersection with the line selected for the southern boundary of the new county. That the legislature in so defining the eastern boundary of Pease County by the act of 1875 intended that it should be the same meridian or line described in the first section of the act as the western boundary of

Crook County does not admit of controversy.  It would not have been plainer had the act in terms described said boundary as the line of said meridian.  That being true, it is impossible to ascribe to the same language and description which was followed in the act defining the boundaries of Sheridan County a different meaning.

It was necessary in the Nevada case above referred to for the court to take notice of the extrinsic fact of the conclusive practical location of the designated corner, and to assume that the facts thereof were within the knowledge of the legislature, in order to construe the statute as intending the corner practically so established, instead of the line as found described by law.  In the opinion of the writer it would have been a more logical statement of the ground of the conclusion in that case, if the court had said that the practical location of the corner, made as authorized by law, had become conclusive between the counties interested and the public, until a legally authorized re-establishment thereof, and, therefore, was to be taken as the true corner, however inaccurately located.  But it would be going far beyond that case to hold here that the legislature intended by its description the line of a survey made without authority of law, and left inconclusive and disputable by the only provision of law referring to it.  The natural and ordinary meaning of the description found in the statute we are considering is the true northwest corner and west boundary line of Crook County.  To make it mean otherwise it would be necessary to imply, or add to the language employed, qualifying and restrictive words, and this without any proper facts to justify it.

In construing a conveyance wherein land is described by reference to the line or lines of an adjoining tract, as where a boundary is described as coincident with or running to the line of another tract, or an "adjoiner" as it is called in law, the general rule is that the true line of the adjoiner is meant, and not a particular location of the line, or, in other words, the true line, irrespective of errors in location.

(4 Ency. L., 2nd Ed. 781; 5 Cyc. 881; Hall v. Davis, 122 Ga. 252; Cleveland v. Flagg, 4 Cush. 76; Northrop v. Sumney, 27 Barb. 196; Sparhawk v. Bagg, 16 Gray, 583; White v. Jones, 67 Me. 20.)  In the case last cited a call in a deed was "thence northerly, on the easterly line of said Bartlett Street, to land known as the Cilley lot."  The court said: "The true line is not in dispute.  This call is not to a stake and stones.  It is to an ascertained and unquestioned line. Nor does it matter that there may have been a misapprehension as to where the Cilley line was or an occupation of land by the coterminous owners not in accordance with the true Cilley line.  That line, when ascertained, is the termination of the line indicated by the third call.  A quit claim deed of land bounding it by the land of A conveys the grantor's title up to the true line of A notwithstanding a portion of the grantor's land was held adversely by A in consequence of an erroneous location of the division fence.  The line of a lot means the true line, not a conventional line which may have been agreed upon by the parties."

Taking the description of the boundaries of Sheridan County, as found in the statute, the absence of any reference to the previous survey of the designated corner and boundary of Crook County would seem to indicate an intention to ignore or repudiate it, rather than to adopt it.  It was so held in Texas in relation to a similiar statute (Wise County v. Montague County, 21 Tex. Civ. App. 444).  The facts in that case were similiar to those in the case at bar, except that there was no intervening statute claimed to have recognized the survey relied on.  The suit was brought to establish the boundary between the two counties, and Wise County contended that a line known as the "Camp line" established by a survey made for that county should be regarded as the boundary line.  At the time said survey was made the territory in question adjoining Wise County was a part of Cooke County, and the survey had been made without notice to the latter county, as required by law to give conclusive effect to such a survey.  Montague County was

subsequently created out of Cooke County, and the north boundary of Wise County was designated as part of the south boundary of Montague County. The words of the statute in that connection were: "Beginning six miles west of the northeast corner of Wise County; thence west with the north line of Wise and Jack Counties." (Tex. Rev. Stat. 1879, p. 143.) The court referred to the decision in the case of Marsalis v. Garrison, *supra,* to the effect that an *ex parte* survey by one county would not bind the adjoining county, and then answering the contention that the proceedings of commissioners courts are conclusive, said:

"We do not, however, understand it ever to have been within the scope of the powers conferred upon the county or county commissioners court of any one county to settle by judicial determination a disputed boundary line with another county. * * * * Wise County sought by this suit to show by special proceedings under the statute in force when they were had that the boundary line between Wise and Montague Counties had been established at a different place from that fixed by the law creating Wise County, and so as to include more territory than she was entitled to under the law. In order to do this, it was incumbent on her to show that the special proceedings relied on were what the law authorized, and not merely that they had the semblance of statutory validity. This by the verdict, which is amply sustained by the evidence, she failed to do." In reference to the statute defining the boundaries of Montague County, it was said:

"As the Camp line was erroneous and unsatisfactory to Montague County, the act of 1879 redefining the boundaries of Montague seems to have rejected it and declared the true boundary to be where the law creating Wise County had originally fixed it. That and not the Camp line was the north boundary line of Wise County, and the effort to establish a different line, encroaching upon the territory of Montague, seems to have been thus repudiated and the true line re-established. If it had been intended to adopt the

Camp line, it would have been in some manner referred to in the act, but the north boundary line running west was called for, instead of the Camp line."

It was held in Maine that if a proceeding for settling disputed lines between towns had not been concluded in conformity with the provisions of the statute a new petition could be sustained without any reversal of the prior proceedings; in other words that the establishment of a common boundary between towns must be made pursuant to law to become binding and conclusive. (Monmouth v. Leeds, 76 Me. 28.)

The description of the boundary line of a county or of a state by reference to the line of another county or state is not unusual and generally, at least, where a question has arisen as to such line, it has been assumed that the reference was to the true line, or the line as defined by law, and the judicial inquiry has been directed to the ascertainment of the correct location thereof. (See Link v. Jones, (Colo.) 62 Pac. 339; Lampasas Co. v. Coryell Co., 27 Tex. Civ. App. 195; Baker Co. v. Benson, (Or.) 66 Pac. 815; Pardee v. Orvis, 103 Pa. St. 451; Alabama v. Georgia, 13 How. U. S. 381, & 23 Id. 505, involving the boundary line between Alabama and Georgia, the eastern boundary of Alabama being defined as the western boundary line of Georgia; Missouri v. Iowa, 7 How. 660, 160 U. S. 688, and 165 U. S. 118, involving the boundary between said states, the southern boundary of Iowa having been described by reference to the northern boundary of Missouri; U. S. v. Texas, 162 U. S. 1.) It does not seem to have been supposed in any case coming under our observation that a statute of that character was intended to designate a line as located alone by the county or state whose boundary was referred to.

There does not appear upon the facts to have been such long acquiescence in the line as surveyed by Crook County as would preclude Sheridan County from maintaining this proceeding, and indeed there does not seem to have been any direct acquiescence in said surveyed line. It is ad-

mitted that owing to the fact that the land in the disputed strip was but sparsely settled, little occasion had arisen until recently for any dispute concerning the boundary. The court below properly found that Crook County had not acquired any rights in or to the territory included within the disputed strip, by reason of the Hanson survey, or by adverse possession or otherwise that would prevent the location of the true boundary line in this proceeding.

To say that this proceeding cannot be maintained by Sheridan County, because the Hanson survey was recognized as locating the boundary until such boundary should be otherwise established or located by law or through the medium of the statutory proceedings, is to beg the question, for the very object of this proceeding is to have the boundary otherwise located by law, and the statutory method of doing so is invoked by this application. The line to be so located is not the line of a previous survey, but the boundary line as designated by law; that is what the statute contemplates and authorizes. This is not a proceeding to restore a lost survey or boundary, but to locate a boundary which has never been conclusively located. As to the boundary in question Johnson County cannot institute the proceeding. It must be instituted by either Crook or Sheridan County.

It was correctly decided by the findings and judgment that the 106th meridian of longitude west from Greenwich had been and was by law fixed and designated as the western boundary of Crook County and the eastern boundary of Sheridan County. That is the line or boundary to be located and established by the survey to be made in this proceeding.

It appears that the appointment of a surveyor to survey and locate the boundary line was not made, for the reason that the parties agreed that the same might be deferred until a conference between the parties to see if they could agree upon the person to be appointed, and it was ordered that the appointment would be made by the court upon motion of either party. For the reasons stated in this opinion

the judgment of the district court will be affirmed, and the cause remanded for further proceedings in accordance with law.                                                    *Affirmed.*

BEARD, J., concurs.

SCOTT, J., dissents.


SCOTT, JUSTICE, (dissenting).

The right of Sheridan County to maintain an action for a survey of its eastern boundary is unquestioned, but I am unable to reconcile the law as it appears to me with that announced by the majority opinion this day filed. The question presented is, What is the eastern boundary of Sheridan County? Is it the true location of the 106th meridian west longitude, or is it the survey of such meridian which was caused to be made by Crook County in 1885 in an attempt to locate and mark its western line? The correct solution of this question depends upon whether the legislature created Sheridan County with reference to a located boundary line or with reference solely to the exact position of the meridian. There is no doubt that an examination of the various statutes creating the counties and defining their boundaries disclose that the legislature intended that the dividing line between Johnson, from which the territory embraced in Sheridan County was taken, and Crook County should be the 106° of longitude west from Greenwich. The correctness of the survey of that meridian which was made by Crook County in 1885 is here questioned. That survey was *ex parte* and in the absence of any legislation on the subject neither of those counties was bound thereby. It is conceded that the legislature is and was vested with exclusive power to create these political subdivisions of the state (then territory) and say where their dividing lines shall be. The legislature is also vested with equal power to change such boundary lines from time to time. It may make provision for the survey of such dividing lines and it may also validate an incorrect survey or adopt a survey which is or has been made without authority of law. Con-

ceding then that Johnson County was not originally bound by such survey the question occurs as to what if any effect subsequent legislation had upon the line so surveyed as a boundary line between Crook and Sheridan Counties and which had been theretofore surveyed by Crook County for the purpose of ascertaining its western boundary. The legislature only gave the data from which the boundary line between Crook and Johnson Counties could be run and located upon the ground. The 106° west longitude was simply data from which such survey could be made by a competent surveyor, and the survey when so made whether made by authority of law or not could be recognized, adopted or ratified by the legislature as the correct location of the dividing line. After Crook County had caused its western boundary survey to be made the act under which this suit is brought was enacted by the legislature. (Chap. 87, S. L. 1886.) Such survey had then been in existence for nearly a year and it may be further said that Sheridan County was not created until more than three years after such survey was made. I am unable to concur in the construction placed upon the proviso of the first section of that act by the majority of this court. Generally speaking the act provides a method for obtaining the survey and settlement of disputed boundary lines between counties by a proceeding in the district court. It is a statutory proceeding not theretofore provided in this jurisdiction. The proviso is as follows: "Provided, That the provisions of this chapter shall not apply to the county line between Crook and Johnson Counties, until the county surveyor of Johnson County shall have made a survey of this line, when, if the survey made by Crook County and the survey made by Johnson County shall not be made to agree, it will be settled in the same manner as other disputed boundary lines provided by this chapter." This proviso is a recognition by the legislature of the fact that Crook County had made a survey of its western county line. The legislature had knowledge that such survey had been made and by the proviso the right to

dispute the correctness of this survey under the provisions of this act was expressly withheld from those counties until Johnson County had surveyed its east county line and such surveys were found to disagree. My view is that whether the survey made by Johnson County disagreed with the one theretofore made by Crook County is immaterial in this case for the reason that neither of those counties so far as the record shows ever sought to make that fact judicially appear by the institution of a suit under the statute, and for another reason hereinafter stated. It was necessary to make that fact appear in any proceeding under the statute between those counties before the court could order a survey of the county line between them. It is clear that in such a proceeding a petition which failed to allege such fact would be demurrable. Though there may have been a dispute upon the facts by which a right of action accrued, yet the law limited proof of such dispute to proof of a disagreement of such surveys—a disagreement that did not exist then and which could only arise thereafter. I think that the effect of the language of this proviso in withholding the right of these counties to maintain an action for a survey of their common boundary line until a disagreement was found to exist in the line as surveyed by Crook County and the line as surveyed by Johnson County necessarily means until this showing could be judicially made to appear and was a limitation on the right of either county to question the correctness of the survey theretofore made by Crook County and in that sense was an affirmance by the legislature of the correct location of the 106° west longitude by the Crook County survey and binding on those counties and their inhabitants until an order should be entered approving a new and different survey in a suit under the statutes by and between those counties. It is and was optional on the part of those counties to abide by the Crook County survey or have a resurvey made after the separate surveys were found to disagree, under and in pursuance of the statute, but for the purposes of county government and the admin-

istration of justice I think it was the legislative intent by the language of this proviso to bind both counties to that survey until a survey of such boundary was made and approved in a judicial proceeding for that purpose. To my mind it seems incredible that a mere disagreement between the surveys without further proceedings by either county invalidated the Crook County survey. The right to a survey of such boundary line could only be secured by an order of the court and such order was authorized only in case of a disagreement in the surveys theretofore made of that line. There is a wide distinction between an accrued right to bring an action, and the right which may be secured by such action. When a legislature withholds the right to dispute the survey of a boundary line it establishes that line as correctly located by such survey regardless of errors in the survey. When the line is established by law upon a contingency it shall be deemed and taken as correct until the happening of such contingency. I insist that an accrued right to maintain an action under this statute does not establish the object sought, viz.: the survey and settlement of a disputed boundary line without the intervention of a decree of court for that purpose. The decree approving a survey theretofore made in pursuance of an order of the court would establish the boundary line regardless of any. and all other surveys theretofore made, whether such surveys possessed any validity or whether they were correct or not.

It is true that in the acts of the legislature creating Crook and Johnson Counties it was provided that the dividing line between those counties should be the 106° west longitude, but that act should and must be construed in connection with the proviso above quoted which in effect adopted the survey of the western line of Crook which had theretofore been made by that county, and to be regarded and binding upon those counties, as a correctly located boundary line until a survey was made and the line so run by such survey approved as the boundary line by a decree of court in a

suit under the provisions of the statute, and until the happening of that event such surveyed line was established and constituted for all legal purposes a correct location of the meridian.  Upon the organization of Sheridan County no right was reserved to Johnson County to dispute the correctness of the boundary between Crook and Sheridan Counties.  The legislature had power to adopt so much of the surveyed line even though it had theretofore recognized it as subject to dispute between Crook and Johnson as the dividing line between Crook and Sheridan, regardless of whether it was a correct location of the meridian or not.

Our system of government requires that these county lines shall be marked upon the ground in such a way that they shall be visible and susceptible of proof, and if a line is so marked for that purpose and possesses any legal validity it can not be invalidated except by the marking of a line pursuant to an order of the court in a proceeding to establish the true boundary.  The western line of Crook County had been surveyed by that county.  That survey had been recognized by the legislature and its correctness had not been questioned in any judicial proceeding by that or Johnson County.  In the absence of and until such proceeding, in so far as those counties are concerned, it should be deemed and considered for county purposes a correct location of the 106° west longitude and binding upon them and their inhabitants.  There may have been error in such survey.  The 106° west longitude may not have been correctly located upon the ground, yet the act in effect declared that such survey was for the purpose of locating that meridian and should be deemed to be correct not alone until its correctness should be properly assailed but until it is displaced by a correctly surveyed line under and in pursuance of a statutory proceeding therefor.  It was by virtue of such proviso the only physical boundary line in existence between Crook and Johnson Counties at the time of the creation of Sheridan County and in the absence of any judicial proceeding on the part of either of those counties should be deemed

and regarded as a correct location of the dividing line be-
tween those counties at the time and as they then existed.
The power of the legislature in such cases is aptly expressed
in Trinity County v. Mendocino County, 151 Cal. 279, 90
Pac. 685. In that case the dividing line was the fortieth
parallel of north latitude. A survey of this line was made
in pursuance of statute and one of the provisions of the
act was "that the lines so run out, marked and defined as
required by this act are hereby declared to be the true
boundary lines of the counties named herein." It was sought
to dispute the correctness of the survey and the court say:
"It is conceded that if, after the survey was made, the leg-
islature had enacted a law providing that the line so marked
should be the dividing line between the counties, it would,
therefore, constitute such boundary, no matter how much it
differed from the true line or position of the fortieth par-
allel, and that, even if such act was passed in ignorance of
such mistake or error in the survey, it would make no dif-
ference in the survey." It is true that in that case the sur-
vey was originally made under authority of law, but the
case is nevertheless in point as showing the power of the
legislature in such matters. It is also true that the survey
made by Crook County was *ex parte* and further that there
was no statutory provision for the survey of county bound-
ary lines at that time. Had there been a joint survey by
those counties neither would have been bound by any error
committed in such survey, but the legislature could by en-
actment have validated the line run by such survey, not-
withstanding errors or mistakes therein. I can see no dif-
ference in principle between the power of the legislature
to validate as true, and bind the counties to, an incorrect
survey of a boundary line purporting to have been made by
authority of law and validating as a true location of a
boundary line an incorrect survey which was made without
authority of law. If it can do either it certainly can adopt
and confirm as a correct survey a part of such line and
leave the remaining portion of such line open to dispute.

Has Sheridan County the right to dispute the correct location of the meridian or is it bound by the purported survey of such meridian? If the legislature created the county solely with reference to such meridian it can. If on the other hand it was created with reference to a surveyed line of such meridian it is bound by the line so surveyed. The legislature in the act creating Sheridan County and defining its boundaries says: "Commencing at the northwest corner of Crook County, thence south along the western boundary of Crook County," &c. The word "boundary" has a well defined meaning. Webster defines it as "that which indicates and fixes a limit or extent, or marks a bound, as of territory," and "in its original or strictest sense, is a visible object or mark indicating a limit." The word as used in this section it seems to me should be given its usual and accepted meaning. The act was with reference to the boundary of territory and I think referred to some visible, tangible object or mark indicating a limit. The language imports more than a descriptive line, and while the meridian originally fixed as the western line of Crook County is not here mentioned, yet the act, it seems to me, had not only reference to the 106° west longitude, but also to the survey which the legislature had recognized for temporary purposes at least as a correct location of that meridian and to remain binding as a surveyed boundary line between Johnson and Crook Counties, and which could not be invalidated or superseded except by a decree of the court approving a survey ordered by it in pursuance of the statute. I am all the more convinced of the correctness of this view for, as already stated, our system of government requires that these county lines shall be marked upon the ground in such a way that they may be visible and susceptible of proof. The creation of a county precedes its organization. Its creation must be from counties already created or organized. It is the policy of the law that when a county is organized it shall possess all the powers incident and necessary to maintain its government. The state also is vitally inter-

ested in this question as it bears upon the matter of the administration of justice. It does not seem reasonable that on the creation of Sheridan County and when it became organized that the western boundary of Crook County as it had theretofore been surveyed and recognized by the legislature was not the one the legislature had in mind. If it was not, then great difficulty would result both to the state and the defendant in the prosecution of a criminal case where the venue was made to depend upon the position of a meridian line in the absence of its projection, or of a survey which had been authorized by law. In my judgment Sheridan County was, therefore, created with reference to a located boundary line, the notes of which survey are accessible by the parties as shown by the agreed statement of facts, and for that reason I am of the opinion that a survey of the boundary line between it and Crook County should be limited to retracing and rebuilding of such located boundary line and not to a re-establishment of the meridian which might be at a new or different place than that fixed by the former survey. If such surveyed boundary line was in fact incorrect as claimed by the defendant in error, then Sheridan County having been created with reference to such located line the change of the boundary between that county and Crook County to a line other than the one so located lies with the legislature and not with the courts. For the foregoing reasons I think the order should be reversed and the case remanded for further proceedings in accordance with these views.